**MOGINRUBIN LLP**
Daniel J. Mogin, Esq., Bar No. 95624
Jennifer M. Oliver, Esq., Bar No. 311196
Timothy Z. LaComb, Esq., Bar No. 314244
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

**SCHACK LAW GROUP**
Alexander M. Schack, Esq., Bar No. 99126
Natasha N. Serino, Esq., Bar No. 284711
Shannon F. Nocon, Esq., Bar No. 316523
16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
Tel: (858) 485-6535
Fax: (858) 485-0608
alexschack@schacklawgroup.com
natashaserino@schacklawgroup.com
shannonnocon@schacklawgroup.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA ATKINSON AND KATIE RENVALL, INDIVIDUALLY AND ON BEHALF OF CLASSES OF SIMILARLY SITUATED INDIVIDUALS,<br><br>                              Plaintiffs,<br><br>     v.<br><br>MINTED, INC.,<br><br>                              Defendant. | Case No.:  3:20-cv-03869-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: May 13, 2021<br>Time: 2 p.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 4-17 |

PLEASE TAKE NOTICE THAT Plaintiffs Melissa Atkinson and Katie Renvall, individually and on behalf of a class of similarly situated individuals ("Plaintiffs"), move this Court to grant Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Hearing on this motion will be held on May 13, 2021, at 2:00 p.m., via Zoom webinar before the Honorable Vince Chhabria, San Francisco Courthouse, 450 Golden Gate Avenue, Seventeenth Floor, Courtroom 4, San Francisco, California.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). Plaintiffs respectfully request that the Court preliminarily approve the parties' Settlement Agreement and for entry of an Order that:

- o Grants class certification of the following proposed settlement class under Federal Rule of Civil Procedure 23 (b)(3):

> All residents of the United States who had a Minted online account, or provided Minted their name, email address, street address and/or other personal information via email, the Minted website, or other online communications, on or before June 27, 2020.

> The Settlement Class specifically excludes: (i) Minted and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who have provided Minted with an express release of claims arising out of or related to the Security Incident prior to the Effective Date of this Settlement.

- o Preliminarily approves the proposed settlement as fair, reasonable and adequate;

- o Directs notice to be disseminated to Settlement Class Members in the form and manner proposed by Plaintiffs as set forth in the Settlement Agreement and exhibits thereto;

- o Sets deadlines for class notice to be sent and deadlines for exclusions;

- o Appoints A.B. Data Ltd. to serve as the Notice and Claims Administrator;

- o Appoints Melissa Atkinson and Katie Renvall as Settlement Class Representatives;

- o   Appoints Jennifer M. Oliver of MoginRubin LLP and Natasha N. Serino of Schack Law Group as Class Counsel; and

- o   Sets a hearing date and schedule for final approval of the settlement and consideration of Class Counsel's motion for award of fees, costs, expenses, and service awards.

Plaintiffs' Motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities and all attachments and supporting exhibits thereto, the pleadings, records, and other papers filed in this action. Plaintiffs propose the following deadlines:

| **Event** | **Date** |
|---|---|
| Notice Period | Will commence 30 days from the instant Preliminary Approval Order |
| Class Counsel Motion for Attorneys' Fees and Costs | 60 days from the Preliminary Approval Order |
| Claims Deadline | 125 days from the Preliminary Approval Order |
| Opt-Out and Objection Deadline | 125 days from the Preliminary Approval Order |
| Motion for Final Approval | 170 days from the Preliminary Approval Order |
| Reply in Support of Motion for Final Approval and Attorneys' Fees and Costs | 184 days from the Preliminary Approval Order |
| Final Approval Hearing | |

Dated: April 16, 2021

By: _____/s/Jennifer M. Oliver_____

**MOGINRUBIN LLP**
Daniel J. Mogin, Esq., (SBN  95624)
Jennifer M. Oliver Esq., (SBN  311196)
Timothy Z. LaComb Esq., (SBN 314244)
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel:    (619) 687-6611
Fax:    (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

**SCHACK LAW GROUP**
Alexander M. Schack, Esq., (SBN 99126)
Natasha Serino, Esq., (SBN 284711)
Shannon F. Nocon, Esq., (SBN 316523)
16870 West Bernardo Drive, Suite 400
San Diego, California 92127
Telephone: (858) 485-6535
Facsimile: (858) 485-0608
alexschack@schacklawgroup.com
natashaserino@schacklawgroup.com
shannonnocon@schacklawgroup.com

*Attorneys for Plaintiffs and*
*Proposed Class Counsel*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

**Table of Contents**

I.   INTRODUCTION .................................................................................................... 1

II.  SUMMARY OF THE LITIGATION ..................................................................... 2

III. THE SETTLEMENT TERMS ................................................................................ 4

   A.   Summary of the Settlement ............................................................................. 4

   B.   The Settlement Class ...................................................................................... 4

   C.   The Settlement Fund ....................................................................................... 5

   D.   Business Practice Changes ............................................................................. 6

   E.   Proposed Notice Plan ..................................................................................... 7

   F.   Claim Form and Claim Process ...................................................................... 9

   G.   Service Awards ............................................................................................. 10

   H.   Attorneys' Fees, Costs, and Expenses ......................................................... 10

   I.   Release of Claims ......................................................................................... 11

IV. ARGUMENT ....................................................................................................... 11

   A.   The Proposed Settlement Class Should be Preliminarily Certified ............... 11

     i.   The Class Meets the Requirements of Rule 23(a) ........................................ 11

    ii.   The Class Meets the Requirements of Rule 23(b)(3) .................................... 13

   B.   The Court Should Grant Preliminary Approval ............................................ 14

     i.   The Strength of Plaintiff's Case .................................................................. 15

    ii.   The Risk, Expense, Complexity and Likely Duration of Further Litigation ................... 16

iii.    The Risk of Maintaining Class Action Status Throughout Trial ................................ 17

iv.    The Amount Offered in Settlement .................................................................... 17

v.    The Extent of Discovery Completed and the Stage of the Proceedings ......................... 20

vi.    The Experience and Views of Counsel ................................................................... 22

vii.    The Presence of a Government Participant ................................................................ 22

viii.    The Reaction of Class Members to the Proposed Settlement ...................................... 22

ix.    The Proposed Settlement is Non-Collusive and the Product of Arms-Length

Negotiations ................................................................................................................ 23

C.    The Court Should Approve The Proposed Notices and Authorize Dissemination ............ 23

D.    The Court Should Appoint Plaintiffs' Counsel as Settlement Class Counsel ................ 24

E.    The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary

Approval Order ................................................................................................................ 25

V.  CONCLUSION ................................................................................................................ 25

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR**
**PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

Table of Authorities

*Adkins v. Facebook,*
    424 F.Supp.3d 686 (N.D. Cal. 2019) ............................................................17

*AT&T Mobility LLC v. AU Optronics Corp.,*
    707 F.3d 1106 (9th Cir. 2013) .....................................................................14

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011).....................................................................................16

*Betancourt v. Advantage Hum. Resourcing, Inc.,*
    No. 14-CV-01788-JST, 2016 WL 344532 (N.D. Cal., Jan. 28, 2016) ..........19

*Browning v. Yahoo! Inc.,*
    No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal., Nov. 16, 2007)..........15

*Churchhill Vill., L.L.C. v. General Elec.,*
    361 F.3d 566 (9th Cir. 2004) .......................................................................15

*Cotter v. Lyft, Inc.,*
    193 F.Supp.3d 1030 (N.D. Cal. 2016) ..........................................................14

*Dohrman v. Intuit, Inc.,*
    823 Fed.App'x. 482 (9th Cir. 2020) ..............................................................21

*Garner v. State Farm Mut. Auto. Ins. Co.,*
    No. CV08 1365-CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................23

*Gunther v. Alaska Air Group, Inc.,*
    No. 37-2017-00037849-CU-OE-NC, 2019 WL 8402163 (Cal.Super. Sep. 4, 2019).....22

*Hesse v. Sprint Corp.,*
    598 F.3d 581 (9th Cir. 2010) .......................................................................11

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .....................................................................13

*In re Anthem, Inc. Data Breach Litig.,*
    No. 5:15-md-02617-LHK (N.D. Cal., April 18, 2018)........................... *passim*

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.,*
    No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky., Aug. 23, 2010) ..........18

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR
PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*,
  No. 17-MD-2785-DDC-TJJ, 2020 WL 2836954, at *2 (D. Kan. June 1, 2020) .............8

*In re Google Plus Profile Litig.*,
  No. 5:18-cv-06164-EJD, 2021 WL 242887 (N.D. Cal., Jan. 25, 2021) .......................23

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
  293 F.R.D. 21 (D. Maine 2013) .......................................................................17

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F.Supp. 2d 1040 (S.D. Tex. 2012) .............................................................18

*In re LDK Solar Sec. Litig.*,
  No. C07-05182 WHA, 2010 WL 598361 (N.D. Cal., Feb. 17, 2010) ...........................8

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015)................................................................12, 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................................12, 20

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) .......................................................................11

*In re Omnivision Techs., Inc.*,
  559 F.Supp.2d. 1036 (N.D. Cal. 2007) ............................................................22

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .......................................................................10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
  No. MDL 14-2522 (PAM/JJK), 2015 WL 6777384 (D. Minn., Oct. 23, 2015).......16, 18

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga., Aug. 23, 2016) .................18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal., July 22, 2020) ....12, 16, 18, 19

*In re Yahoo Mail Litig.*,
  No. 13-CV-4980-LHK, 2016 WL 4474612 (N.D. Cal., Aug. 25, 2016).......................10

*In re Zappos.com, Inc.*,
  888 F.3d 1020 (9th Cir. 2018) ................................................................15, 16

*Johnson v. Quantum Learning Network, Inc.*,

No. 15-CV-05013-LHK, 2017 WL 747462 (N.D. Cal., Feb. 27, 2017).........................15

*Just Film, Inc. v. Buono,*
    847 F.3d 1108 (9th Cir. 2017) .....................................................................................12

*Munday v. Navy Fed. Credit Union,*
    No. 15-cv-01629-JLS, 2016 WL 7655807 (C.D. Cal., Sept. 15, 2016)............................8

*Noll v. eBay, Inc.,*
    309 F.R.D. 593 (N.D. Cal. 2015)..................................................................................24

*Rodriguez v. Hayes,*
    591 F.3d 1105 (9th Cir. 2010) .....................................................................................12

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ..........................................................................13, 17, 23

*Stovall-Gusman v. W.W. Granger, Inc.,*
    No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 1, 2015).........................19

*Sullivan v. DB Invs, Inc.,*
    667 F.3d 273 (3d Cir. 2011)..........................................................................................14

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ..........................................................................................23

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) ...........................................................................11, 14

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011).......................................................................................................12

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010) .....................................................................................14

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR
PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

Plaintiffs Melissa Atkinson and Katie Renvall (collectively "Plaintiffs" or "Class Representatives"), individually and on behalf of all persons similarly situated (the "Class"), respectfully submit this Notice of Motion and Memorandum of Points and Authorities in support thereof, to be heard on May 13, 2021 at 2:00 pm, respectfully requesting the Court enter an order granting preliminary approval of the class action settlement described herein.

## I.   INTRODUCTION

In mid-2020, Minted was the target of a cyberattack that resulted in the theft of approximately 4.1 million customers' personal information. After a year of litigation and in advance of Minted's motion to compel arbitration, the parties reached a comprehensive settlement that guarantees relief for all Settlement Class Members, in the form of both monetary compensation and mandatory data security changes. Among other things, the proposed Settlement establishes a non-reversionary $5,000,000 fund to provide participating Settlement Class Members with cash compensation, credit monitoring and personal identity restoration services.[1] As further detailed herein, the proposed data breach settlement warrants preliminary approval because it provides above-average monetary compensation based on per capita numbers, valuable nonmonetary class relief, meaningful security changes, robust direct notice, and timely relief when Plaintiffs and the putative class faced the risk of forced individual arbitration.

Based on per capita numbers, the proposed fund is more than double numerous other approved data breach settlements. Moreover, participating Class Members will receive an estimated $43 payment and two years of credit monitoring services, which retail for approximately $9.95 per month. Declaration of Justin Parks ("Parks Dec.") at ¶ 20 – 22. Settlement Class Members subject to identity theft can also obtain fraud resolution assistance to dispute transactions, mediate calls with merchants, and implement fraud alerts. *Id.* at ¶ 23.

---

[1] Declaration of Natasha Serino ("Serino Dec."), Exhibit ("Ex.") A (Settlement Agreement) at ¶ 2.2, 3.3, 4.1. The Settlement Agreement is attached to the Declaration of Natasha Serino as Exhibit A. For reference purposes, however, the Settlement Agreement shall hereafter be referred to as "SA", "Settlement" or "Settlement Agreement."

1

In addition, Minted must implement a host of business practice changes to prevent future exfiltration of consumer data and address security weaknesses believed to have contributed to the breach. *See* SA at ¶ 6.2 – 6.13. These measures, which were vetted by Plaintiffs' expert, include enhancing password protection, implementing a policy regarding minimizing retention of customers' personally identifiable information ("PII"), conducting risk-based security monitoring, implementing safeguards to identify external threats, and undergoing two annual audits. *Id.* The nonmonetary relief, including enhanced security, credit monitoring, and identity restoration services, will provide important security benefits *now*, when they are most critical for Class Members. *See* Declaration of Matthew Strebe ("Strebe Dec.") at ¶ 9. To this end, the efficient resolution of this matter provides for speedy relief for the class, helps prevent future theft of consumers' PII, and avoids the possibility of individual arbitration, which Minted planned to seek. Plaintiffs therefore strongly believe the proposed Settlement is favorable to the class and will withstand rigorous scrutiny. In addition, Plaintiffs' proposed notice program, which includes direct email notice and a targeted social media campaign, will fully inform Settlement Class Members and encourage their participation through a simple claim process.

Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the parties' Settlement Agreement and enter an order that: (1) certifies the proposed settlement class under Rule 23 (b)(3); (2) preliminarily approves the proposed Settlement as fair, reasonable, and adequate; (3) directs notice to be disseminated to Settlement Class Members in the form and manner proposed by the parties as set forth in the Settlement and Exhibits A-E thereto; (4) appoints A.B. Data, Ltd. to serve as the Settlement Administrator; (5) appoints Jennifer M. Oliver and Natasha N. Serino as Class Counsel; (6) appoints Melissa Atkinson and Katie Renvall as Class Representatives; and (7) sets a hearing date and schedule for final approval of the settlement, including a motion for approval of attorneys' fees and expenses.

## II.    SUMMARY OF THE LITIGATION

In May 2020, Plaintiffs began investigating a cybersecurity incident involving Minted and a hacking group known as Shiny Hunters. Serino Dec. at ¶ 3; Declaration of Jennifer Oliver ("Oliver Dec.") at ¶ 3. In June 2020, after sending notice pursuant to California Consumer Privacy Act § 1798.150, Plaintiffs filed the instant action against Minted, Inc. ("Minted") with regard to the data breach incident, in which Shiny Hunters stole millions of customer records from Minted's user account database on May 6, 2020. Complaint ("Compl.")., ECF 1 at ¶ 1; Serino Dec. at ¶ 6, 8; Oliver Dec at ¶ 7 – 8. Plaintiffs asserted claims under California's Consumer Privacy Act, the Unfair Competition Law, and negligence. *Id*. at ¶ 73 – 93. In July 2020, having received no response to the CCPA letter, Plaintiffs filed an amended complaint seeking statutory penalties, as well as declaratory and injunctive relief. First Amended Complaint ("FAC"), ECF 12 at ¶ 77 – 84.

Over the next month, Plaintiffs investigated legal issues related to Minted's anticipated motion to compel arbitration and complied with disclosure requirements under Fed. R. Civ. P. 26. Oliver Dec. at ¶ 11 – 13. On September 1, 2020, the parties filed a joint case management statement and Rule 26(f) report in which Plaintiffs outlined various discovery they planned to seek as part of Minted's motion to compel arbitration. ECF 23 at 7 – 8. On September 11, 2020, per the Court's order following the case management conference, the parties filed a stipulation regarding a schedule for arbitration-related discovery. ECF 25; Serino Dec. at ¶ 12. Over the next three months, the parties engaged in early-stage filings, letter briefs, and a contentious dispute over arbitration discovery. Oliver Dec. at ¶ 15 – 16. As part of this process, the parties exchanged certain information and Plaintiffs prepared to sit for deposition on November 20, 2020. *Id.* The parties then agreed to engage in mediation. Oliver Dec. at ¶ 17 – 18.

On December 1, 2020, the Court granted the parties' stipulation to stay deadlines pending mediation until January 19, 2021. ECF 35 at 2. On January 5, 2021, counsel for the parties engaged in an arm's-length, remote, day-long mediation session facilitated by Randall Wulff, Esq. Serino Dec. at ¶ 11; Oliver Dec. at ¶ 18. Although they reached a tentative agreement at mediation, it took over three months to procure and review further information regarding the breach and Minted's financial statements, continue detailed negotiations over the business practice changes with expert

consultation, and agree on settlement terms. Oliver Dec. at ¶ 19 – 22; Serino Dec. at ¶ 14 – 15. On April 15, 2021, the parties finally reached a Settlement Agreement to resolve this litigation. *Id.*

## III.    THE SETTLEMENT TERMS

### A.  Summary of the Settlement

On April 15, 2021, the parties entered into a Settlement Agreement whereby Minted agrees to establish a $5,000,000 settlement fund and implement several business practice changes to enhance security. SA at ¶ 1.18, 2.2, 6.1 – 6.14. Under the proposed Settlement, based on projected claim rates, participating Settlement Class Members will each receive an estimated $43 payment after submitting a valid Claim Form, subject to pro rata increase or pro rata reduction. SA at ¶ 3.3; Parks Dec. at ¶ 21. The Settlement also provides Settlement Class Members with free credit services including credit monitoring, fraud alerts and identity restoration services. SA at ¶ 4.1. In addition, Minted must implement certain agreed-upon cybersecurity measures at its expense. These include enhanced password protection, implementation of a written information security program, annual security awareness training for software employees, and policies regarding personal information retention. *Id.* at ¶ 6.1 – 6.13. Class Representatives will seek Service Awards of $5,000 each. Finally, Class Counsel will request the Court approve up to $1,200,000.00 (slightly less than 25%) from the Settlement Fund for their attorneys' fees, reasonable costs and expenses of the Litigation.

### B.  The Settlement Class

The proposed Settlement Class is defined as:  All residents of the United States who had a Minted online account, or provided Minted their name, email address, street address and/or other personal information via email, the Minted website, or other online communications, on or before June 27, 2020.[2]

---

[2] The Settlement Class specifically excludes: (i) Minted and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who have provided Minted with an express release of claims arising out of or related to the Security Incident prior to the Effective Date of this Settlement. SA at ¶ 1.25.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

The proposed class includes approximately 4.1 million affected Minted customers nationwide. Serino Dec. at ¶ 33. Since a litigation class has not yet been certified, Plaintiffs streamlined the Settlement Class definition from the First Amended Complaint based on information obtained from Defendant. FAC, ECF 12 at ¶ 28 ("All individuals whose PII was compromised in the Data Breach.") Notwithstanding the change, the Settlement Class still parallels definitions in the First Amended Complaint because the Minted accountholders as of May 6, 2020, and those who otherwise gave personal information through the Minted website, are the "individuals whose PII was compromised in the Data Breach." Moreover, the Proposed Settlement Class provides a single nationwide class rather than a nationwide class *and* a California class. *See* N.D. Cal. Procedural Guidance for Class Action Settlements ("Class Action Guidance"), Preliminary Approval 1(a); FAC, ECF 12 at ¶ 28. The class is easily identifiable because the breach affected Minted's user database, which contains the PII of all persons who were Minted account holders or provided Minted with PII on or before June 27, 2020.

### C.  The Settlement Fund

The proposed Settlement requires Minted to pay $5,000,000 into a Qualified Settlement Fund. SA at ¶ 1.18, 2.2. The Settlement funds will be used to (1) provide monetary compensation to the settlement class; (2) provide two years of free credit monitoring and identity restoration services for Settlement Class Members who elect to receive it during the claims process; (3) issue notice to the Settlement Class; (4) pay for the administration of the settlement; (5) provide for class representative incentive payments in the amount of $5,000 each to Katie Renvall and Melissa Atkinson; (6) pay costs and attorneys' fees up to $1,200,000 (less than the 25% benchmark rate); and (7) cover any necessary taxes and fees. *Id.* at ¶ 2.3.  There shall be no reversion of settlement funds to Minted or Class Counsel. *Id.* at ¶ 2.4.

Based on anticipated participation, participating Settlement Class Members will receive an estimated payment of $43, subject to a pro rata increase or reduction. Parks Dec. at ¶ 21. At their election, Settlement Class Members can also receive credit services provided by Equifax. SA at ¶ 4.1. These include two years of free credit monitoring with a retail value of $238.80 and personal identity restoration services for Settlement Class Members who are or become the victim of

identity theft. Parks Dec. at ¶ 22 – 23; SA at ¶ 4.1. These restoration services include assistance with disputing transactions, preparing paperwork, implementing fraud alerts, and negotiating with banks, creditors, the IRS and other third parties. Parks Dec. at ¶ 23. By structuring relief in this way, the Settlement guarantees recovery for all participating Class Members, instead of only those with documented losses. Because the Settlement Class is easily identifiable, Claims can also be submitted without documentation or proof of loss, thereby minimizing administration costs, maximizing class payments and encouraging participation.

### D.  Business Practice Changes

As part of the Settlement, Minted must also implement several cybersecurity measures to address weaknesses believed to have contributed to the May 2020 breach. These measures will be paid solely by Minted and not from the Settlement Fund.  SA at ¶ 6.1. These mandatory business practice changes include (1) maintaining a written information security program to identify security risks to users' PII and implement security protections; (2) changing Minted's policies regarding retention of customers' PII to avoid maintaining it beyond an appropriate retention period; (3) providing annual information security training to all employees and training on secure coding practices for its software developers; (4) increasing password protection, including but not limited to increased frequency of salting and hashing; (5) implementing an application to filter, monitor and block HTTP traffic to protect against attacks; (6) conducting risk-based monitoring of security events and maintaining risk-based vulnerability scanning processes; (7) enhancing security features for its software coding repository; (8) implementing a patch management process to ensure security patches are up-to-date on company-owned workstations and servers; and (9) enhanced security requirements for vendors in possession of Minted data. SA at ¶ 6.2 – 6.12. Minted must also conduct a cybersecurity audit to ensure compliance with SOC 2 Type 1 standards within a year of Final Judgment and a follow-up audit one year later. *Id.* at ¶ 6.13.

Plaintiffs negotiated these measures in consultation with security professionals and they represent significant improvements in Minted's security practices. Strebe Dec. at ¶ 10 – 13; Oliver Dec. at ¶ 23. Minted must also provide a detailed report at the Final Fairness Hearing detailing the

status of compliance with the change. SA at ¶ 6.14. The security fortifications required by the Settlement are sufficient to prevent a recurrence of this breach and reduce future risks. Strebe Dec. at ¶ 10. Accordingly, these non-monetary business practice changes materially enhance the value of the Settlement, represent a significant financial investment by Minted and further add to the relief afforded to the Settlement Class Members. By coupling these security enhancements with the monetary benefits, the Settlement Agreement provides renewed confidence that Minted will prospectively protect consumer data.

### E.  Proposed Notice Plan

Plaintiffs propose to provide notice via methods that are easy and appropriate for class members, all of which are Minted e-commerce customers. Given that Minted has email addresses for all customers, the Notice Plan contemplates providing direct email notice to all 4.1 million Settlement Class Members. SA at ¶ 7.1 – 7.2; Parks Dec., Ex. B. To supplement this notice, the plan includes a social media campaign narrowly targeted at Settlement Class Members. SA at ¶ 7.2; Parks Dec. at ¶ 10 – 13. This backstop social media campaign will help boost email notice. Oliver Dec. at ¶ 31. It will also bolster the effectiveness of email notice by providing another touchpoint for class members. *See* Parks Dec. at ¶ 13. The parties will also provide notice via a link on the front page of Minted's website for 45 days, dissemination of a press release to English and Spanish outlets, and a dedicated settlement website. SA at ¶ 7.2; Parks at ¶ 4 – 5, 14 – 15.

Under the proposed Notice Plan, the Notice and Claims Administrator will begin notice to the Settlement Class no later than thirty (30) days after preliminary approval via the Email Notice. SA at ¶ 7.2; Parks Dec. at ¶ 7, Ex. B. This email will include a link to the Settlement Website, where class members can access the Long-form Notice, Settlement Agreement, Claim Form and other case documents. Park Dec. at ¶ 7, Ex. B. In crafting the Class notice, Plaintiffs relied on the Federal Judicial Center's model notices, used plain English and avoided unnecessary acronyms. *See* Standing Order for Civil Cases before Judge Vince Chhabria ("Standing Order"), §49; Serino Dec. at ¶ 36. The Class notice clearly summarizes the nature of the action, the terms of the agreement (including the definition of the Settlement Class), the relief provided by the Settlement Agreement, Class Counsel's request for fees and expenses, the scope of the release, the binding

nature of the Settlement on class members. SA, Exs. C, D at 3 – 5, 10; Serino Dec. at ¶ 35; Parks Dec., Ex. B. Per the District's Procedural Guidance for Class Action Settlements, the notice also includes contact information for Class Counsel, the Settlement website, and instructions to access the case docket. SA, Exs. C, D at 10 – 11; Parks Dec., Ex. B. Once set by the Court, the notice will also specify the date and time of the final approval hearing and advise that said date may change without further notice to the class. SA, Exs. C, D at 9; Serino Dec. at ¶ 35.

The proposed notice also clearly advises Settlement Class Members of their right to opt out of the Settlement, summarizes the procedure for doing so, and describes the consequences for opting out. SA, Exs. C, D at 7; Parks Dec., Ex. B. The notice does not require extraneous information in order to opt out of the settlement. *See* Class Action Guidance, §4. Similarly, the notice also describes the procedure for filing timely, written objections to the Settlement, but acknowledges only substantial compliance is required. SA, Exs. C, D at 7 – 8; *see* Standing Order, §49. It further explains that the requirement for written objections may be excused upon a showing of good cause, and that only substantial compliance is necessary. *See id.*

The parties propose that A.B. Data, Ltd. be appointed the Notice and Claims Administrator. Oliver Dec. at ¶ 18, 35. A.B. Data is a nationally recognized class action notice and administration firm that participated in crafting the Settlement starting during the parties' mediation. *Id.* at ¶ 18. A.B. Data also helped design the class notice plan, which the parties and A.B. Data believe will be very effective. Parks Dec. at ¶ 2, 26 – 27. A.B. Data has decades of experience in class notice and administration and has offered innovative ideas to help reduce administration costs and extend reach, including use of digital payments and targeted social media marketing. *See* Parks Dec. at ¶ 2 – 3, 10, 24, Ex. A; *Munday v. Navy Fed. Credit Union,* No. 15-cv-01629-JLS, 2016 WL 7655807, at *9 (C.D. Cal., Sept. 15, 2016); *In re LDK Solar Sec. Litig.,* No. C07-05182 WHA, 2010 WL 598361, at *3 (N.D. Cal. Feb. 17, 2010); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.,* No. 17-MD-2785-DDC-TJJ, 2020 WL 2836954, at *2 (D. Kan. June 1, 2020). As a result of these suggestions and the direct email notice, Plaintiffs expect the costs of notice and settlement administration to be low – approximately $200,000. Parks Dec. at ¶ 25.

### F.  Claim Form and Claim Process

The Settlement sets forth a simple process for Settlement Class Members to electronically submit their claims without the need for copious documentation. The online claim process is appropriate and accessible to the technologically oriented Settlement Class, all of which are users of Minted's e-commerce website, which targets younger users. Settlement Class Members will have 125 calendar days after preliminary approval to submit a valid claim via the Settlement website.[3] SA at ¶ 3.1, 4.3. The simple Claim Form requires only necessary contact information and selection of relief (i.e., Payment and/or Credit Services). SA, Ex. B at 2; Parks Dec. at ¶ 19. Because the parties can easily ascertain the Settlement Class, the Claim Form does not require burdensome information or documentation of losses, which might deter participation.[4] Serino Dec. at ¶ 38. Since Settlement Class members may not have the time to gather the documents needed to prove losses incurred as a result of a data breach, Class Counsel ensured the Claim Form submission process would take less than five minutes to complete. *Id.*

The Claims Administrator will confirm that claimants are Settlement Class Members and eliminate duplicate submissions, but otherwise complete Claim Forms will be deemed valid. SA at ¶ 3.2. To further reduce administration costs, the Claims Administrator will issue payments digitally (i.e. a virtual debit card, PayPal or Amazon credit), although Settlement Class Members have the option to request paper checks. Parks Dec. at ¶ 24. The Claims Administrator estimates payments will be approximately $43 per claimant, subject to adjustment on a *pro rata* basis, based on their extensive experience and analysis of claims rates in similar cases. Parks Dec. at ¶ 21.  For Settlement Class Members who also elect Credit Services, the Claims Administrator will also send them an activation code to activate their Credit Services within 60 days of the Final Judgment date. SA at ¶ 13.1. The Claims Administrator will also provide instructions on the activation process, including via a dedicated page on the settlement website. *Id.*

---

[3] Settlement Class Members may elect to receive a mailed copy of the Claim Form. SA at ¶ 13.1(i); Parks Dec. at ¶ 9.
[4] Submission of Claim Forms is necessary—as opposed to simply receiving checks—because Settlement Class Members must elect whether they wish to receive credit monitoring and identity restoration services. In addition, the parties may not have a current mailing address for all Settlement Class Members such that they could receive checks. *See* Standing Order, §49.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR
PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

In comparison to other data breach claim procedures, Class Counsel anticipate the simplicity of the proposed claim process will encourage additional participation by Settlement Class Members. Serino Dec. at ¶ 38, 40; *see* Class Action Guidance, § 1(g). Specifically, the Settlement Administrator estimates participation will be approximately 2%, Parks Dec. at ¶ 21 which is significantly higher than other recent data breach settlements involving documented losses. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK, ECF 1007 at 4 (N.D. Cal., April 18, 2018) and ECF 1007-6 at ¶ 2. In *Anthem*, the overall claims rate was 1.7%, with credit monitoring claims representing 1.6% and alternative compensation claims representing just .17%. *Id.* Notably, the claim rate for out-of-pocket claims was only .0086% (6,809 out-of-pocket claims/79,150,325 total class members). *Id.* Having reflected on these participation rates, Class Counsel made every effort to simplify the claim process in order to maximize participation. *See* Serino Dec. at ¶ 38 – 40.

### G. Service Awards

Class Counsel will request the Court award Representative Plaintiffs Melissa Atkinson and Katie Renvall a service award of $5,000 each from the Qualified Settlement Fund in recognition of the time, effort and expense they incurred pursuing claims against Defendant.  Ms. Atkinson and Ms. Renvall accepted their responsibilities as class representatives admirably and gave their time on behalf of the class, including preparing to sit for depositions in November 2020. Renvall Dec. at ¶ 3 – 4; Atkinson Dec. at ¶ 3 – 4. Moreover, the proposed service award is reasonable considering the Ninth Circuit's $5,000 benchmark. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-948 (9th Cir. 2015); *In re Yahoo Mail Litig.,* No. 13-CV-4980-LHK, 2016 WL 4474612, at *11 (N.D. Cal., Aug. 25, 2016). Finally, Plaintiffs' agreement to the Settlement is not conditioned on the service award, nor are there any other conditions on the incentive awards. *See* Class Action Guidance, §7; Atkinson Dec. at ¶ 6; Renvall Dec. at ¶ 6.

### H. Attorneys' Fees, Costs, and Expenses

Pursuant to the common fund doctrine, Class Counsel will seek an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses. The Settling Parties did not negotiate the payment of Class Counsel's attorneys' fees, costs, expenses and Class Counsel has

10

agreed not to seek more than $1.2 million from the Settlement Fund for fees, costs and expenses. *Serino Dec.* at ¶ 19. While this amount is slightly less than the Ninth Circuit's 25% benchmark rate, Class Counsel recognizes any amount awarded is at the discretion of the Court. This motion will be filed at least sixty-five (65) days prior to the deadline for objecting to the proposed settlement. *See* Class Action Guidance, §6; Standing Order, §49; *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-994 (9th Cir. 2010).

### I.   Release of Claims

In exchange for benefits provided under the Settlement, Settlement Class Members will release any legal claims that arise or relate to the facts alleged in the complaint.  SA at ¶ 1.20, 10.1. Class Members are only releasing claims based on the identical factual predicate. *See Hesse v. Sprint Corp.,* 598 F.3d 581, 590 (9th Cir. 2010); Standing Order, §49. Moreover, there are no differences between the released claims and the claims in the operative complaint.  *See* Class Action Guidance, § 1(c).

### IV.   ARGUMENT

The proposed settlement warrants preliminary approval because it provides Settlement Class Members with certain compensation when the claims otherwise faced a serious risk of individualized arbitration that would have rendered them financially inviable to pursue. When, as here, the parties settle before class certification, courts must review the proposed agreement to approve both the propriety of the certification and the fairness of the settlement. The proposed class meets the certification requirements under Rule 23 and the proposed settlement is fundamentally fair, adequate and reasonable.

### A.  The Proposed Settlement Class Should be Preliminarily Certified
### i.   The Class Meets the Requirements of Rule 23(a)

In order to obtain preliminary approval, a class action must first satisfy the four threshold requirements under Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The proposed Settlement Class fulfills these prerequisites. First, the putative class consists of approximately 4.1 million Minted users and therefore easily satisfies the numerosity requirement. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482,

486 (E.D. Cal. 2010) (finding that numerosity is routinely met where the class consists of more than 40 members).

The Settlement also meets the commonality requirement, which requires that class members' claims "depend upon a common contention" that is capable of classwide resolution such that, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, there are common questions arising from the data security breach that occurred on or about May 6, 2020 and resulted in the theft of approximately 4.1 million users' PII. *See* Serino Dec. at ¶ 3, 33. As in other data breach litigation, commonality exists; the critical question is whether Minted failed to take adequate measures to protect customers' personal information. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 at *3 (N.D. Cal., July 22, 2020); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 584 (N.D. Cal. 2015). Because the answer to such question is uniform for all Settlement Class members, their claims are capable of classwide resolution under *Dukes.*

Minted's inadequate data security also similarly affected its users in that all of their personal information was taken during the breach, thereby establishing typicality.  Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (stating that the typicality requirement is permissive and requires only that the claims are reasonably co-extensive, not identical). Like the rest of the Class, the Representative Plaintiffs are Minted users who provided PII to Minted, and whose PII was later exfiltrated from Minted by hackers during the breach. Atkinson Dec. at ¶ 2; Renvall Dec. at ¶ 2 – 3. Plaintiffs' and Class members' names, login credentials, telephone numbers, billing addresses and shipping addresses were compromised. SA at 2. The Representative Plaintiffs therefore endured a course of conduct directed against the Class. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) (finding typicality where Plaintiff and the Class were similarly defrauded in a credit card processing scheme, even though the extent of their injuries differed). Accordingly, Plaintiffs have met their burden of showing typicality.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR
PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

Finally, the Representative Plaintiffs will fairly and adequately protect the interests of the Class. This requirement looks at whether: (1) the named plaintiffs or their counsel have any conflicts with the Class; and (2) the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the Class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). In this case, all Settlement Class members were victims of the same event and therefore no conflicts of interest exist between the Class and the Representative Plaintiffs.   As further detailed below, Plaintiffs are also represented by experienced counsel who have decades of experience litigating class action cases. *See* Serino Dec. at ¶ 28 – 30; Oliver Dec. at ¶ 26 – 28.   The core terms of the settlement were negotiated with the able assistance of a well-respected mediator thereby ensuring that it was negotiated at arms-length on a non-collusive basis. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

### ii.   The Class Meets the Requirements of Rule 23(b)(3)

In addition to meeting the requirements of Rule 23(a), the Class also satisfies Rule 23(b)(3) because (1) common questions predominate over any questions affecting only individual members; and (2) the class action mechanism is superior to other available methods for the fair and efficient resolution of the matter. Fed. R. Civ. P. 23(b)(3). As to predominance, "there is clear justification for handling the dispute on a representative rather than individual basis" when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). In *Anthem*, the court recognized that the claims turned on whether Anthem properly secured customers' information. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018).  Here, the claims also rise or fall on whether Minted employed reasonable security measures to guard user information. As in *Yahoo*, these questions would be resolved with the same evidence for all class members and depend on Minted's conduct. *Yahoo!*, 2020 WL 4212811, at *7.

In addition, choice-of-law considerations do not pose a threat to predominance.  Plaintiffs asserted claims for violation of the CCPA (California Class), violation of California Unfair Competition Law (California Class), and negligence (all classes). *See* FAC, ECF 12 at ¶ 76 – 96. The common law negligence claim has universal elements (i.e., duty, breach, causation and

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

damages) and the crux of the claim turns on the common question of whether Minted implemented reasonable data security. Defendant is also a California company headquartered in San Francisco, where it presumably makes data security decisions.  As such, the conduct at issue is sufficiently tied to California such that application of its law is appropriate. *See AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112-1113 (9th Cir. 2013). Minted is also likely to seek application of its Terms of Service, which contain a California choice-of-law provision.  *See Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal.4th 906, 915-918 (2001).

The class mechanism also provides a superior method for resolution because it is the most efficient and effective means of addressing consumers' claims. Manageability at trial is not a concern where plaintiffs propose certification of a settlement class. *Vasquez*, 266 F.R.D. at 488; *see also Sullivan v. DB Invs, Inc.*, 667 F.3d 273, 302-303 (3d Cir. 2011). Nevertheless, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).  Here, each of the approximately 4.1 million affected Minted users would need to address the same complex technical issues with numerous experts at significant cost. Just as with other data breach class settlements, these litigation costs would far outweigh the individual amounts at stake.  *See, e.g., Anthem*, 327 F.R.D. at 315. Accordingly, Plaintiffs meet all the requirements of Rule 23(a) and (b)(3).

### B.  The Court Should Grant Preliminary Approval

Both the scope of the settlement and the risks of further litigation (or individual arbitration) warrant preliminary approval of the Settlement. When evaluating a proposed class action settlement, the standard is whether the settlement as a whole is fundamentally fair, adequate and reasonable. Fed. R. Civ. P. 23(e)(1)(B) and (2); *Anthem*, 327 F.R.D. at 316; *see Cotter v. Lyft, Inc.*, 193 F.Supp.3d 1030 (N.D. Cal. 2016) (stressing the importance of a thorough evaluation at the preliminary approval stage to ensure class members obtain the full court protection that Rule 23 demands). In determining whether a settlement is fair, adequate and reasonable, courts consider the following: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the

14

amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Churchhill Vill., L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

### i. The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case against Minted for liability, but acknowledge procedural and substantive legal uncertainties that support settlement. On May 28, 2020, Minted publicly acknowledged that on May 6, 2020 unauthorized actors obtained information from its user account data base, including but not limited to customers' names, login credentials, telephone numbers, addresses and emails. Serino Dec. at ¶ 4. Plaintiffs alleged that prior to the breach, Minted failed to take appropriate security measures, such as implementation of an appropriate intrusion detection system, and ultimately failed to detect the intrusion. FAC, ECF 12 at ¶ 12, 15, 68 – 70. After the breach, Minted failed to take prompt remedial measures and waited more than two weeks to notify customers. *See* Atkinson Dec. at ¶ 2; Renvall Dec. at ¶ 2.

Here, the Settlement reflects the strength of Plaintiffs' claims regarding the breach, as well as Defendant's anticipated arguments, particularly on arbitration. "In considering the strength of Plaintiff's case, legal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval." *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal., Nov. 16, 2007); *Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-05013-LHK, 2017 WL 747462, at *1 (N.D. Cal., Feb. 27, 2017) (finding Defendant's pending motion to compel arbitration created an uncertainty supporting approval). Moreover, data breach litigation is a new and developing field, with many untested and potential landmine issues. *See Anthem*, 327 F.R.D. at 317.

Minted has and will continue to advance numerous procedural and substantive defenses. Most notably, Defendant plans to move to compel arbitration and opposes classwide arbitration based on Minted's current terms of service. Serino Dec. at ¶ 24. While Plaintiffs intended to submit strong evidence and arguments opposing arbitration, they recognize the real possibility of individual arbitration and that separate proceedings would not be economically viable for most

affected customers.  *Id.* at ¶ 7, 24-26. Defendant is also likely to raise arguments put forth in other data breach litigation including causation and standing. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1029 (9th Cir. 2018) (alleging that plaintiffs lacked standing and the ability to show their damages stemmed from the Zappos hack, as opposed to some other breach). As with all data breach cases, providing injury or loss is difficult on a class basis and many of the methods, such as loss of value of PII and the benefit of the bargain approaches, remain untested with juries—although upheld by the courts. *See, e.g., In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2016 WL 3029783, at *13-15 (N.D. Cal. May 27, 2016).

### ii.  The Risk, Expense, Complexity and Likely Duration of Further Litigation

The risk, expense, complexity and likely duration of further litigation also support preliminary approval. Although Plaintiffs have a strong liability case based on Minted's failure to adopt adequate security measures and promptly notify customers of the breach, continued litigation poses the risk of arbitration, class certification hurdles and contentious Daubert motions.  For example, before the Settlement, Defendant planned to seek arbitration on an individual basis. Serino Dec. at ¶ 17. Although Plaintiffs contend arbitration is not required pursuant to California Civil Code § 1798.192, the absence of an agreement and various other defenses, they acknowledge the federal policy favoring arbitration poses a significant and potentially case-crippling risk. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); Serino Dec. at ¶ 24 – 26.

Assuming Plaintiffs overcome the arbitration issue, they face challenges obtaining class certification, procuring the necessary discovery and preparing for trial. Data breach cases also involve technical cybersecurity issues of cybersecurity that necessitate numerous experts. *See, e.g., Anthem*, 327 F.R.D. at 317 (noting that the parties would have relied on ten expert witnesses to prepare for trial but for the settlement). Moreover, data breach cases frequently entail numerous *Daubert* challenges and fierce disputes over whether companies must produce consultant reports. *See, e.g., Yahoo!*, 2020 WL 4212811, at *9 (discussing Yahoo's efforts to exclude plaintiffs' expert damage models); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL142522PAMJJK, 2015 WL 6777384, at *2 – 3 (D. Minn., Oct. 23, 2015). More broadly, this breach involves millions of Minted account holders, numerous legal theories, and significant costs.  Even assuming

Plaintiffs surmount these obstacles, the outcome at trial is always uncertain and even a successful trial is subject to appeals. Such appeals would substantially delay recovery for the class when credit monitoring and identity restoration services are needed now.

### iii.   The Risk of Maintaining Class Action Status Throughout Trial

Class certification in this case poses additional risks. First, Plaintiffs anticipate Minted would vehemently challenge their ability to proceed on a class basis and dispute any proposed damage models. Second, there is little precedent concerning certification in data breach actions because an overwhelming majority settle beforehand. *See Anthem*, 327 F.R.D. at 318.   While Plaintiffs expect to prevail at class certification under a viable damages model, they appreciate recent authority denying class certification in other data breach actions. *See, e.g., Adkins v. Facebook*, 424 F.Supp.3d 686, 699 (N.D. Cal. 2019) (granting certification of injunctive-only class but denying certification of damages class); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Maine 2013). Even when a court grants certification, it can decertify a class at any time. *Rodriguez*, 563 F.3d. at 966. Accordingly, the risks of securing and maintaining certification favor preliminary approval of the Settlement.

### iv.   The Amount Offered in Settlement

The proposed $5,000,000 Settlement provides significant relief for the class, both in comparison to other data breach settlements and in consideration of the nonmonetary relief envisioned in the Settlement.   In terms of direct relief to the class, the $5,000,000 settlement fund would provide for an estimated $43 payment per participating class member, two years of credit monitoring, and identity restoration services. SA at ¶ 3.3, 4.1; Parks Dec. at ¶ 21 – 23.  The timing of the Settlement also helps class members capitalize on the benefits when they are most needed. By providing access to credit monitoring services now (as opposed to years down the road), Settlement Class Members can identify improper activity when it is more likely to occur. *See* Strebe Dec. at ¶ 9. Were class members to procure this service independently, it would cost an estimated $9.95 per month (or $238.80 for two years). Parks Dec. at ¶ 22.

Based on the smaller size of the breach and per-capita figures, the proposed Settlement is also particularly robust when compared to other recent data breach settlements.  For example, the

17

$10 million consumer settlement in the Target data breach litigation covered an estimated 100 million customers. *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL No. 14-2522 (PAM), 2017 WL 2178306, at *1-2 (D. Minn. May 17, 2017). Likewise, in the Home Depot data breach litigation, the court approved a $13 million settlement for a class of roughly 40 million consumers. Serino Dec., Ex. B at 5, 9; *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *7 (N.D. Ga., Aug. 23, 2016) and ECF 181-2 at ¶ 22, 38. In fact, the proposed Settlement provides more relief per class member than is common, based on review of several recent data breach settlements. *See Yahoo!*, 2020 WL 4212811, at *10-11; *Home Depot*, 2016 WL 6902351, at *7 and ECF 181-2 at ¶ 22, 38; *LinkedIn*, 309 F.R.D. at 581; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp. 2d 1040, 1047, 1079-1080 (S.D. Tex. 2012); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *7, 9 (W.D. Ky., Aug. 23, 2010); *Target*, 2017 WL 2178306, at *1-2; *Anthem*, 327 F.R.D. at 318.

| PER CAPITA DATA ON RECENT DATA BREACH SETTLEMENTS | | | | |
|---|---|---|---|---|
| Litigation | Customers Affected | Settlement Fund | Per Capita Number | Credit Monitoring |
| *Atkinson, et al. v. Minted, Inc.* | 4.1 million | $5 million | 1.22 | 2 years |
| *In re Target Corp. Customer Data Breach Security Litig.* | 100 million | $10 million | .10 | Reimbursement of cost upon provision of documentation |
| *In re the Home Depot, Inc., Customer Data Sec. Breach Litig.* | ~ 40 million | $13 million | .33 | 18 mos. Identity Guard Essentials monitoring services |
| *In re Yahoo! Inc. Customer Data Breach Litig.* | 194 million | $117.5 million | .61 | 2 years |
| *In re LinkedIn User Privacy Litig.* | 6.4 million | $1.25 million | .20 | NA |
| *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.* | > 100 million | Up to $2.4 million | .024 | NA |
| *In re Anthem, Inc. Data Breach Litig.* | 79.15 million | $115 million | 1.45 | 2 years |
| *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.* | 17 million | $6.5 million | .38 | 2 years |

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR PRELIMINARY APPROVAL; CASE NO. 3:20-CV-03869-VC**

The proposed Settlement is also reasonable in light of the potential class recovery. *See* Class Action Guidance, Preliminary Approval 1(e). In many other data breach cases, the parties employed damage models that evaluated the value of customers' PII to assess potential damages. *See Anthem*, 327 F.R.D. at 319; *Yahoo!*, No. 5:16-md-02752-LHK, ECF 369 at 26 – 27 (April 9, 2019). In *Anthem*, for example, the parties used the black market price of personal information, with plaintiff's expert valuing the damages at $10 per individual and Defendant's expert valuing them at $4 per individual. *Anthem*, 327 F.R.D. at 319. Applying the midpoint of these figures ($7.00), the potential damages in this case could total approximately $28,700,000 million. Thus, the $5,000,000 proposed Settlement represents approximately 17.4% of the potential recovery that Settlement Class Members might obtain if they prevailed on their claims.  This percentage is comparable with *Anthem* and is within the range of reasonableness based on the significant costs and risks of continued litigation (or arbitration), as further detailed above. *See, e.g., Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532, at *5 (N.D. Cal., Jan. 28, 2016) (finding a settlement representing approximately 9.7% of the potential recovery within the range of reasonableness); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 1, 2015) (finding a settlement worth 10% of the potential recovery reasonable); *Anthem*, 327 F.R.D. at 319.

Unlike settlements in many other data breach cases, the proposed Settlement also provides a guaranteed payment to all participating Settlement Class Members without requiring them to spend additional time gathering documentation concerning their losses. Class Counsel recognizes that such procedures, while useful under certain circumstances, impose substantial burdens on class members and provide little benefit where a breach is particularly recent. *C.f., Yahoo!*, 2020 WL 4212811 at *22, 32 (involving breaches that began approximately 8 years before the class action settlement and providing for reimbursement of documented losses).  By structuring payments in this manner, Plaintiffs decreased the cost of administering the settlement and maximized relief for the class.  Parks Dec. at ¶ 21. The proposed Settlement structure also seeks to encourage participation. *See* Serino Dec. at ¶ 38 – 40.  Settlement Class Members who are or become victims of identity theft will have access to identity restoration service that will assign

them a dedicated representative to provide fraud resolution assistance, dispute transactions, prepare and submit paperwork for them, mediate calls with merchants, negotiate on their behalf, use limited power of attorney and assist with fraud alerts. Parks Dec. at ¶ 23.

The Settlement also includes valuable non-monetary relief that reduces the risk that class members' information is subject to a future intrusion.  Under the Settlement, Minted must: (1) maintain an information security program to implement safeguards and identify external security risks to customers' PII; (2) provide annual security training for employees, including on secure coding; (3) implement an application that filters, monitors and blocks HTTP traffic to Minted's website to protect against attacks; (4) enhance password protection through increased frequency of salting and hashing; (5) conduct monitoring of security events and vulnerability scanning; (6) implement a policy regarding retention of customers' PII to avoid maintenance of PII beyond what is appropriate; (7) enhance security features for its software coding repository; and (8) implement a patch management process to ensure security patches are up-to-date on company-owned workstations and servers. SA at ¶ 6.2 – 6.12. Minted also agreed to an annual security audit under recognized cyber security frameworks. *Id at* ¶ 6.13.  Plaintiffs' own expert supports these hard-fought measures as significant and earnest steps to prevent future breaches. *See* Strebe Dec. at ¶ 10-13. Moreover, these business practice changes will benefit all Settlement Class members regardless of participation.  Given the size of the fund and the nonmonetary relief provided, the amount of the settlement weighs in favor of preliminary approval.

### v. The Extent of Discovery Completed and the Stage of the Proceedings

Class Counsel's independent investigation of the breach, extensive consultation with industry experts, and widespread public reporting of the broader Shiny Hunters hack provided Plaintiffs with ample data to negotiate a beneficial settlement for the Class.  "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459. While the parties acknowledge that discovery and proceedings were in the early stages, this factor nevertheless weighs in favor of preliminary approval.

In particular, Class Counsel independently investigated Minted's data breach, including the specific information taken by Shiny Hunters, the scope of the breach and Minted's response. Oliver Dec. at ¶ 3 – 6, 8 – 9. Class Counsel also researched Minted's potential exposure, liability and defenses in drafting the Class Action Complaint and litigating this matter. *See* Serino Dec. at ¶ 5 – 6. As part of these efforts, Class Counsel consulted with appropriate industry experts throughout the litigation, including as part of the settlement process to ensure Minted made meaningful cybersecurity changes. Oliver Dec. at ¶ 5, 7, 20 – 21, 24. Class Counsel has also taken advantage of publicly available information regarding this breach, which Minted announced to customers on May 28, 2020. Serino Dec. at ¶ 5; Atkinson Dec. at ¶ 2; Renvall Dec. at ¶ 2.

As to formal discovery, the parties exchanged initial disclosures pursuant to Rule 26(a), met and conferred regarding contentious arbitration-related discovery for nearly three months, and submitted discovery letters to the Court regarding the same. Oliver Dec. at ¶ 12 – 13, 16. Prior to settlement, the parties were moving forward with arbitration-related discovery and briefing. *Id.* In fact, Plaintiffs were scheduled and prepared to have their depositions taken when the parties agreed to mediate before Randall Wulff of Wulff Quimby Sochynsky ADR. *See* Serino Dec. at ¶ 13 – 14. As part of the litigation and settlement process, Class Counsel also conducted an investigation into Minted's insurance, examined Minted's financials and reviewed Minted's internal reports regarding the breach. Oliver Dec. at ¶ 15, 20.

While nascent, the state of proceedings heavily favors approval. Indeed, the forthcoming motion to compel threatened to derail the class claims by requiring individual arbitration. Plaintiffs had to balance (1) the risk of proceeding with litigation and potentially eliminating the class claims, with (2) the potential benefit of obtaining additional discovery, advancing proceedings and *possibly* procuring additional funds from Defendant. Serino Dec. at ¶ 24 – 26. While Plaintiffs dispute Minted's characterization, Defendant contends customers are required to individually arbitrate disputes pursuant to its Terms of Service. Serino Dec. at ¶ 24. During the course of litigation, the Ninth Circuit also issued an opinion in *Dohrman v. Intuit, Inc.*, 823 Fed.App'x. 482, 484 (9th Cir. 2020) regarding clickwrap agreements. In addition, individual arbitration would obviously preclude any form of class recovery and individual recovery would dwarf the cost of

21

prosecution, particularly given the expertise required in proving data breach cases. Serino Dec. at ¶ 26.   On balance, the stage of the proceedings supports preliminary approval because the Settlement achieves class relief for *all* affected Minted customers.

### vi.   The Experience and Views of Counsel

In evaluating a proposed settlement, the recommendations of Class Counsel should also be given a presumption of reasonableness. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d. 1036, 1043 (N.D. Cal. 2007). Here, Plaintiffs' counsel endorses the proposed Settlement as fair, adequate and reasonable.   Serino Dec. at ¶ 31; Oliver Dec. at ¶ 29. Class Counsel has decades of experience litigating and trying complex and class action cases. Serino Dec. at ¶ 29 – 30; Oliver Dec. at ¶ 26 – 28. Jennifer Oliver is a complex litigator with nearly ten years of experience handling antitrust matters, consumer class actions, and complex commercial litigation, and her firm MoginRubin is known for leadership and success in *Containerboard Products Antitrust Litigation* and *Dynamic Random Access Memory (DRAM) Antitrust Litigation*. Oliver Decl. at ¶ 26 – 28.   Likewise, Natasha Serino has successfully represented aggrieved consumers, employees and tort victims, including as lead trial counsel against Alaska Airlines, which resulted in one of the top ten bench awards in the country for 2019. *See Gunther v. Alaska Air Group, Inc.*, No. 37-2017-00037849CU-OE-NC, 2019 WL 8402163 (Cal.Super. Sep. 4, 2019), (resulting in a $25 million judgment for flight attendants); Serino Dec. at ¶ 30. In light of their experience, Class Counsel's endorsement of the settlement further supports preliminary approval.

### vii.   The Presence of a Government Participant

Plaintiffs pursued claims against Minted without the participation of any government agency.   In the event the Court grants preliminary approval, the parties will notify the U.S. Attorney General and the Attorneys General of each state in accordance with 28 U.S.C. § 1715, who will then have the opportunity to raise any concerns.

### viii.   The Reaction of Class Members to the Proposed Settlement

Plaintiffs strongly support the Settlement. Atkinson Dec. at ¶ 5, 7; Renvall Dec. at ¶ 5. Given the stage of proceedings, the class has not yet been notified or given the opportunity to be heard. As such, it is too early to fully evaluate the class's reaction to the Settlement.

### ix. The Proposed Settlement is Non-Collusive and the Product of Arms-Length Negotiations

In addition to the *Churchill* factors, which weigh in favor of preliminary approval, the Settlement Agreement is the result of lengthy arms-length negotiations. Where a settlement is achieved through arms-length negotiations conducted by capable counsel before an experienced mediator, this further supports preliminary approval. *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV08-1365 CW EMC, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *In re Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD, 2021 WL 242887, at *3 (N.D. Cal. Jan. 25, 2021) (finding a settlement was negotiated at arms-length with the assistance of mediator Randall Wulff). In this case, the Settlement is the product of sustained, arms-length negotiations, including before a recognized mediator. On January 5, 2021, the parties engaged in an all-day mediation before mediator Randall Wulff. Serino Dec. at ¶ 14. After they reached a tentative agreement, it took over three months to negotiate the business practice changes with expert consultation, procure and review Defendant's financials, and agree on settlement terms. Serino Dec. at ¶ 14 – 15; Oliver Dec. at ¶ 18 – 24. Through this process, Class Counsel has carefully vetted the settlement and maximized the benefits to the Class.

### C. The Court Should Approve The Proposed Notices and Authorize Dissemination

The proposed notice program satisfies Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." First, the notice should—and does—clearly state: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members. Fed. R. Civ. P. 23(c)(2)(B). Notice is adequate where it describes the settlement terms in enough detail so as to alert class members with potentially adverse viewpoints to come forward. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (finding notice satisfactory where it

stated the aggregate amount of the settlement and the general formula for computing class member awards). Here, the notice plainly describes the breach, Minted's failure to maintain reasonable security, what the Settlement Fund will be used to pay, how to receive money, how to opt out or object, and the settlement's binding effect. SA, Ex. D at 3 – 8. Moreover, unlike many approved data breach settlements, Settlement Class Members can easily assess their potential recovery as the notice plainly states the Settlement Fund will be used to provide "direct payments of approximately $43 (depending on how many people participate)." SA, Ex. D at 4.

Second, the method of notice, which primarily relies on direct email, befits the class of technologically savvy individuals who used Minted's online platform. *See, e.g., Noll v. eBay, Inc.*, 309 F.R.D. 593, 604-605 (N.D. Cal. 2015).  Due to the nature of its service, Minted can provide email addresses for all Settlement Class Members. *See* SA at ¶ 7.2; Serino Dec. at ¶ 33. Accordingly, the Parties intend to notify Class Members via: (1) email notice with links to the Settlement website; (2) a Settlement website with information regarding the Settlement; (3) a targeted social media campaign; and (4) press release. SA at ¶ 7.2; Parks Dec. at ¶ 5, 7 – 17, Ex. B. Minted has already notified Class Counsel as to 117,111 undeliverable email addresses based on prior communications with their customers. Serino Dec. at ¶ 33. Of the estimated 4.1 million users affected by the breach, this represents approximately 2.8%. *Id.* Therefore, to supplement the email notice, the Claims Administrator will run a digital media campaign targeting Settlement Class Members. Parks Dec. at ¶ 7; Serino Dec. at ¶ 33.   The Settlement Administrator will also take steps to avoid spam filtration by using links instead of attachments, sending in batches, and performing a deliverability analysis. Parks Dec. at ¶ 8. In doing so, they will be able to provide more than adequate notice to the Class. *Id.* at ¶ 26.  Accordingly, the method and content of notice will maximize the reach and information afforded to Settlement Class Members, so they can fully understand their rights and the Court can adequately evaluate any objections.

### D. The Court Should Appoint Plaintiffs' Counsel as Settlement Class Counsel

Pursuant to Rule 23, Plaintiffs' Counsel also request that the Court appoint them Settlement Class Counsel. Fed. R. Civ. P. 23(g)(1). In appointing class counsel, courts consider the following: (1) counsel's work in identifying or investigating potential claims; (2) counsel's experience in

24

handling class actions or other complex litigation, and the types of claims asserted; (3) counsel's knowledge of the applicable law; and (4) counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Here, Class Counsel were the only attorneys to investigate and pursue class claims against Minted related to the May 2020 data breach. Serino Dec. at ¶ 32.  In doing so, they committed significant resources and time to representing affected consumers, despite the significant risk of forced arbitration. *Id*. Ms. Oliver also has substantial experience in complex litigation and data privacy cases, and has written and spoken extensive on privacy, especially the new CCPA.  Oliver Dec. at ¶ 26 – 27.  SLG also has significant class action experience, including on data breach and other consumer cases.  Serino Dec. at ¶ 30.

### E. The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary Approval Order

Once the Court rules on the motion for preliminary approval, the timeline for providing notice, opting out of the Settlement Class, and submitting claims will begin to run.  Plaintiffs therefore provide a proposed schedule in their Motion for Preliminary Approval.

### V. CONCLUSION

In light of the significant benefits provided by the Settlement, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval.

Respectfully Submitted,

Dated: April 16, 2021

By:  ____*/s/Jennifer M. Oliver*____

**MOGINRUBIN LLP**
Daniel J. Mogin, Esq., (SBN  95624)
Jennifer M. Oliver Esq., (SBN  311196)
Timothy Z. LaComb Esq., (SBN 314244)

**SCHACK LAW GROUP**
Natasha Serino, Esq., (SBN 284711)
Shannon F. Nocon, Esq., (SBN 316523)

*Attorneys for Plaintiffs*