**MOGINRUBIN LLP**
Daniel J. Mogin (SBN 95624)
Jennifer M. Oliver (SBN 311196)
Timothy Z. LaComb (SBN 314244)
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

**SCHACK LAW GROUP**
Alexander M. Schack (SBN 99126)
Natasha N. Serino (SBN 28471)
Shannon F. Nocon (SBN 316523)
16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
Tel: (858) 485-6535
Fax: (858) 485-0608
alexschack@schacklawgroup.com
natashaserino@schacklawgroup.com
shannonnocon@schacklawgroup.com

*Class Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MELISSA ATKINSON AND KATIE RENVALL, INDIVIDUALLY AND ON BEHALF OF CLASSES OF SIMILARLY SITUATED INDIVIDUALS,<br><br>      Plaintiffs,<br><br> v.<br><br>MINTED, INC.,<br><br>      Defendant | Case No. 3:20-cv-03869-VC<br><br>**PLAINTIFFS' CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS**<br><br>Hearing Date: December 2, 2021<br>Time: 2 p.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 4-17 |

PLEASE TAKE NOTICE THAT Class Counsel move this Court to grant Plaintiffs' Corrected Motion for Attorneys' Fees, Expenses, and Service Awards.[1] Hearing on this motion will be held on December 2, 2021, at 2:00 p.m., via Zoom webinar before the Honorable Vince Chhabria, San Francisco Courthouse, 450 Golden Gate Avenue, Seventeenth Floor, Courtroom 4, San Francisco, California.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). Plaintiffs respectfully request that the Court approve the motion for entry of an Order that approves Plaintiffs' request for $1,187,537.05 in legal fees, reimburses Class Counsel for $12,462.95 in expenses incurred, and grants a services award of $5,000 for each named plaintiff.

Plaintiffs' Motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities and all attachments and supporting exhibits thereto, the pleadings, records, and other papers filed in this action.

Dated: July 16, 2021

By: _____*/s/Jennifer M. Oliver*_____
**MOGINRUBIN LLP**
Daniel J. Mogin, Esq., (SBN  95624)
Jennifer M. Oliver Esq., (SBN  311196)
Timothy Z. LaComb Esq., (SBN 314244)
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel:    (619) 687-6611
Fax:    (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

---

1 Plaintiffs submit this corrected motion to reduce Class Counsel's fee request to $1,187,537.05 in order to include costs and expenses in the $1,200,000.00 total amount plaintiffs request to be paid from the settlement fund.

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

**SCHACK LAW GROUP**
Alexander M. Schack, Esq., (SBN 99126)
Natasha Serino, Esq., (SBN 284711)
Shannon F. Nocon, Esq., (SBN 316523)
16870 West Bernardo Drive, Suite 400
San Diego, California 92127
Telephone: (858) 485-6535
Facsimile: (858) 485-0608
alexschack@schacklawgroup.com
natashaserino@schacklawgroup.com
shannonnocon@schacklawgroup.com
*Class Counsel for Plaintiffs*

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  SUMMARY OF THE LITIGATION ................................................................... 2

III. THE REQUESTED FEES ARE WARRANTED AND REASONABLE ............................. 4

     A.   The requested fee is reasonable under the common fund percentage method ........ 4

     B.   The requested fee is supported by other relevant considerations. ......................... 6

          1.   Class Counsel has obtained excellent results for the class .............................. 6

          2.   Further litigation presented significant risks and novel issues ....................... 8

          3.   Class Counsel bore risk by accepting a contingency fee case ...................... 10

          4.   Class Counsel delivered a high level of skill and experience. ...................... 11

          5.   The requested fees are reasonable under the lodestar cross check ................ 11

IV.  THE REQUESTED EXPENSES ARE REASONABLE ....................................................... 13

V.   THE REQUESTED SERVICE AWARDS ARE WARRANTED ........................................ 14

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

# TABLE OF AUTHORITIES

## CASES

*Adkins v. Facebook, Inc.*,
 424 F. Supp 3d 686 (N.D. Cal. 2019) ..................................................................... 9

*Aichele v. City of L.A.*,
 2015 U.S. Dist. LEXIS 120225 (C.D. Cal. Sep. 9, 2015) ....................................... 4

*AT&T Mobility LLC v. Concepcion*,
 563 U.S. 333 (2011) ................................................................................................. 8

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................... 12

*Ching v. Siemens Indus.*,
 2014 U.S. Dist. LEXIS 89002  (N.D. Cal. June 27, 2014) ...................................... 10

*Fero v. Excellus Health Plan, Inc.*,
 502 F. Supp. 3d 724 (W.D.N.Y. 2020) ................................................................... 9

*Harris v. Marhoefer*,
 24 F.3d 16 (9th Cir. 1994) ...................................................................................... 13

*In re Anthem Data Breach Litig.*,
 327 F.R.D. 299 (N.D. Cal. 2018) .................................................................... 5, 8, 9

*In re Anthem, Inc. Data Breach Litig.*,
 2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17, 2018) ............................ 4, 7, 13

*In re Banner Health Data Breach Litig.*,
 2020 U.S. Dist. LEXIS 70837 (D. Ariz. Apr. 21, 2020) ......................................... 13

*In re Brinker Data Incident Litig.*,
 2021 U.S. Dist. LEXIS 71965 (M.D. Fla. Apr. 14, 2021) ....................................... 9

*In re Continental Illinois Sec. Litig.*,
 962 F.2d 566 (7th Cir. 1992) .................................................................................. 10

*In re Equifax Customer Data Sec. Breach Litig.*,
 2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020) ....................................... 7

*In re Experian Data Breach Litig.*,
 2019 U.S. Dist. LEXIS 81243 (C.D. Cal. May 10, 2019) ....................................... 13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
 293 F.R.D. 21 (D. Me. 2013) .................................................................................. 9

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

*In re High-Tech Employee Antitrust Litigation*,
2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015) ........................................... 13

*In Re Omnivision*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................ 8, 10, 11

*In re Online DVD-Rental Antitrust Litig* ...................................................... 14

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
2019 U.S. Dist. LEXIS 127093 (D. Or. July 29, 2019) ........................................... 5

*In re Tracfone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................ 4

*In re Yahoo Mail Litig.*,
2016 U.S. Dist. LEXIS 115056  (N.D. Cal. Aug. 25, 2016) ...................................... 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
2020 U.S. Dist. LEXIS 129939 (N.D. Cal. July 22, 2020) ....................................... 9, 13

*Parsons v. Kimpton Hotels and Rest. Grp. LLC*,
3:16-cv-05387-VC at ECF 113-1 (N.D Cal. May 8, 2019) ...................................... 13

*Resnick v. Frank (In Re Online DVD-Rental Antitrust Litig.*),
779 F.3d 934 (9th Cir. 2015) ............................................................ 11

*Rodriguez v. West Publ'g Group*,
563 F.3d 948 (9th Cir. 2009) ............................................................ 14

*Stern v. New Cingular Wireless Servs.*,
2010 U.S. Dist. LEXIS 151037 (C.D. Cal. Nov. 22, 2010) .................................... 12

*TransUnion LLC v. Ramirez*,
2021 U.S. LEXIS 3401 ..................................................................... 9

*Vizcaino v. Microsoft Corp.*,
142 F. Supp. 2d 1299 (W.D. Wash. 2001) .................................................. 10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ......................................................... 4, 5, 6, 7, 11, 12

**STATE STATUTES**

Cal. Civ. Code §1798.150 ................................................................ 9

**STATE CASES**

*Gunther v. Alaska Air Group, Inc.*,
   2019 WL 8402163 (Cal.Super. Sep. 4, 2019) ........................................................................ 11

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

I.      **INTRODUCTION**

Class Counsel has diligently litigated this action for more than a year, ultimately achieving a favorable settlement that provides Settlement Class members with substantial monetary and non-monetary relief. Roughly four million class members will be eligible to receive roughly $43 based on predicted claim rates,[2] (twice as much as class members in comparable data breach settlements), two years of credit monitoring worth $238.80 per claimant, personal identity restoration services, and the benefit of business practice changes at Minted Inc. ("Minted" or "Defendant") that are valued at nearly $2 million which will protect their information going forward. *See* Settlement Agreement ("SA"), ECF 42-2 at ¶ 6.2 - 6.12. And these nonmonetary services will provide important security benefits *now*, when they are most critical.[3]

Class Counsels' request for $1,187,537.05 in fees is warranted and reasonable. Under the Ninth Circuit's preferred percentage of the fund method, the fees are presumptively reasonable because they fall below the 25% benchmark. They are also reasonable and warranted when considering the other factors courts consider, including: (i) the excellent results Class Counsel obtained for the Settlement Class; (ii) the numerous litigation hurdles Plaintiffs would have to overcome before securing funds from a judgment (e.g., applicability of the arbitration clause, class certification, summary judgment, trial, and post-judgment appeals); (iii) the novelty of the CCPA claim; (iv) the high degree of skill and experience Class Counsel offered to class members on an

---

2 The predicted claims rate was determined prior to the start of the notice period.  Raw claims received to date currently indicate an above-average claims rate.

3 *See* Declaration of Matthew Strebe in Support of Motion for Preliminary Approval, ("Strebe Dec."), ECF 42-14 at ¶ 9.

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

entirely contingent basis; and (v) a lodestar multiplier of no more than 1.575, which does not include fees associated with this motion or after the filing of this motion.

Class Counsel also seeks $12,462.95 in expenses, a small fraction of the typical expenses incurred in data breach cases, which speaks to the efficient and effective way Class Counsel litigated this action. Finally, Class Counsel seeks $5,000 in service awards for each of the named plaintiffs, which is in line with or below service awards approved in similar cases. For these reasons and those discussed below, Class Counsels' request for fees, expenses, and service awards should be granted.

## II.    SUMMARY OF THE LITIGATION

In May 2020, Plaintiffs began investigating a cybersecurity incident involving Minted and the Shiny Hunters hacking group. In June 2020, after sending notice to Minted pursuant to California Consumer Privacy Act ("CCPA") § 1798.150, Plaintiffs filed this action alleging that the Shiny Hunters stole millions of customer records from Minted's user account database on May 6, 2020. Complaint ("Compl."), ECF 1 at ¶ 1. Plaintiffs asserted claims under the CCPA, California's Unfair Competition Law, and negligence, and requested statutory penalties and declaratory and injunctive relief. First Amended Complaint ("FAC"), ECF 12 at ¶ 77-84.

Over the next month, Plaintiffs prepared to defend against Minted's anticipated motion to compel arbitration and complied with their disclosure requirements under Fed. R. Civ. P. 26., Declaration of Natasha Serino in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Serino Dec. ISO PA"), ECF 42-1 at ¶ 7. On September 1, 2020, the parties filed a joint case management statement and Rule 26(f) report in which Plaintiffs outlined various discovery they planned to seek as part of Defendant's motion to compel arbitration. Joint Case Management Statement, ECF 23 at 7-8. On September 11, 2020, per the Court's order following

the initial case management conference, the parties filed a stipulation regarding a schedule for arbitration-related discovery and the motion to compel arbitration. Serino Dec. ISO PA at ¶ 12. Over the next three months, the parties engaged in early-stage filings, letter briefs, and a contentious dispute over arbitration discovery. Serino Dec. ISO PA at ¶ 13. As part of this process, the parties exchanged certain information and the named Plaintiffs prepared to sit for deposition on November 20, 2020. *Id.* The parties then agreed to engage in mediation. *Id.*

On December 1, 2020, the Court granted the parties' stipulation to stay deadlines pending mediation until January 19, 2021. ECF 35 at 2. On January 5, 2021, counsel engaged in an arm's-length, remote, day-long mediation session facilitated by Randall Wulff, Esq. Serino Dec. ISO PA at ¶ 14. Although they reached a tentative agreement at the mediation, it took over three months to procure and review further information regarding the breach and Minted's financial statements, continue detailed negotiations over the mandatory business practice changes with expert consultation, and agree on specific settlement terms. *Id.*

Late in the evening of April 15, 2021, as a result of extensive, hard-fought, arms-length negotiations that spanned across many months, the parties signed the final Settlement Agreement. Serino Dec. ISO PA at ¶ 15, ECF 42-2 ("SA"). Pursuant to the Settlement Agreement, Minted deposited $5,000,000 in a qualified settlement fund to be used to provide monetary relief to class members (based on predicted claim rates, estimated at $43 per class member but subject to pro rata increase or reduction), fund class members' requests for free credit monitoring and identity restoration, and pay Class Counsels' fees and expenses. In addition, Minted agreed to implement business practice changes to enhance security at its own additional expense of approximately $2 million, including enhanced password protection, implementation of a written information security

program, annual security awareness training for software employees, and policies regarding personal information retention.

On April 16, 2021, Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement with this Court, ECF 42. Following a remote hearing on May 13, 2021, in which the Court requested small changes to Plaintiffs' proposed notices, the Court entered its order granting Preliminary Approval on May 14, 2021, ECF 52.

## III.    THE REQUESTED FEES ARE WARRANTED AND REASONABLE

The requested fees are warranted and reasonable. They are well within Ninth Circuit benchmarks for the percentage of the fund and lodestar methods. They are also supported by several other factors such as the excellent results obtained by Class Counsel and the numerous and significant risks Plaintiffs faced if continuing with this action.

### A.    The requested fee is reasonable under the common fund percentage method.

The district court has inherent authority to ensure that the amount and mode of payment of attorney's fees in class actions is fair and appropriate. *In re Tracfone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1009 (N.D. Cal. 2015). The primary tool for analyzing fee awards in complex data breach class actions in the Ninth Circuit is the percentage method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("*Vizcaino II*"); *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, at *84-85 (N.D. Cal. Aug. 17, 2018) ("[The] combination of novel legal issues and technical subject matter present in the instant case counsels against the lodestar method because there is no set baseline against which to compare whether hours were reasonably expended."). This is because the percentage method "most closely aligns the interest of the counsel and the class, *i.e.,* class counsel directly benefit from increasing the size

of the class fund and working in the most efficient manner." *Aichele v. City of L.A.*, No. CV 12-10863-DMG (FFMx), 2015 U.S. Dist. LEXIS 120225, *15 (C.D. Cal. Sep. 9, 2015).

When using the percentage of fund method, Ninth Circuit courts typically apply a benchmark of "25% of the recovery obtained, with 20-30% as the usual range." *Vizcaino II*, 290 F.3d at 1047. When valuing the fund, courts often include the value of non-monetary benefits received by class members, including the value of credit monitoring services and data security improvements. *See, e.g., In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI, 2019 U.S. Dist. LEXIS 127093, at *65-72 (D. Or. July 29, 2019) (considering the benefit of credit monitoring services and improved data security practices for class members when assessing overall value of settlement); *see also, e.g., In re Anthem Data Breach Litig.*, 327 F.R.D. 299, 319 (N.D. Cal. 2018) ("nonmonetary relief [in the form of cybersecurity changes] benefits millions of Settlement Class Members, including those who did not submit a claim form").

Class Counsel requests $1,187,537.05. If no value is included for the non-monetary benefits, then the requested fees are approximately 23.75% of the common fund. When only Minted's estimated cost of implementing the cybersecurity changes is included (which is less than the value of these changes to class members), then the requested fees are approximately 17% of the common fund. And, if both the estimated cost of implementing the cybersecurity changes and the retail value of the credit monitoring services is included, then the requested fees are less than 5% of the fund. The requested fees are therefore presumptively reasonable because, even under the most conservative calculation, they are below the 25% benchmark regardless of whether the court includes any value for the non-monetary benefits and below the entire benchmark range of 20-30% when even a lowball value is allocated to them.

B.      **The requested fee is supported by other relevant considerations.**

In addition to the percentage of the fund method, Ninth Circuit courts consider several other factors when analyzing the reasonableness of fees, including (1) the results obtained for the class; (2) the risks taken and novelty of issues involved; (3) the contingent nature of the representation; (4) the skill and experience offered by class counsel; and (5) whether the requested fees are reasonable under the lodestar crosscheck method. *Vizcaino II*, 290 F. 3d at 1048-50.  Here, each of these considerations supports a finding that the requested fees are reasonable.

1.      **Class Counsel has obtained excellent results for the class.**

The quality of the result obtained for the class is the most important factor in evaluating whether Class Counsels' lodestar multiplier is reasonable. *See Jones v. GN Netcom, Inc. (In Re Bluetooth Headsets Prods. Liab. Litig*.), 654 F.3d 935, 942 (9th Cir. 2011). Courts will also consider whether Class Counsels' work on the case generated benefits beyond the cash settlement fund. *Vizcaino II*, 290 F. 3d at 1048-50.

As detailed in the chart below (also submitted in Plaintiffs' Motion for Preliminary Approval), Class Counsel obtained monetary relief and credit monitoring services that are equal to or greater than the per capita recovery in similar cases.

| PER CAPITA DATA ON RECENT DATA BREACH SETTLEMENTS | | | | |
|---|---|---|---|---|
| **Litigation** | **Customers Affected** | **Settlement Fund** | **Per Capita Number** | **Credit Monitoring** |
| *Atkinson, et al. v. Minted, Inc.* | 4.1 million | $5 million | 1.22 | 2 years |
| *In re Target Corporation Customer Data Breach Security Litigation* | 100 million | $10 million | .10 | Reimbursement of cost upon provision of documentation |
| *In re the Home Depot, Inc., Customer Data Security Breach Litigation* | ~ 40 million | $13 million | .33 | 18 months of Identity Guard Essentials monitoring services |
| *In re Yahoo! Inc. Customer Data Breach Litigation* | 194 million | $117.5 million | .61 | 2 years |

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

| | | | |
|---|---|---|---|
| *In re LinkedIn User Privacy Litigation* | 6.4 million | $1.25 million | .20 | NA |
| *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litigation* | > 100 million | Up to $2.4 million | .024 | NA |
| *In re Anthem, Inc. Data Breach Litigation* | 79.15 million | $115 million | 1.45 | 2 years |
| *In re Countrywide Financial Corp. Customer Data Sec. Breach Litigation* | 17 million | $6.5 million | .38 | 2 years |

The fact that the settlement provides claimants with additional security for their accounts and data going forward, *e.g.,* credit monitoring services with a retail value of $238.80 per claimant,[4] also supports a finding that Class Counsels' fee request is reasonable. *In Re Anthem, Inc. Data Breach Litig.,* 2018 U.S. Dist. LEXIS 140137, at *168 (recognizing nonmonetary relief as a relevant consideration in determining attorney were entitled to 27% of cash settlement fund). As noted, Class counsel also negotiated mandatory cybersecurity enhancements aimed at better safeguarding class members' information. Minted has estimated its cost to implement these measures at $1.9 million, and Plaintiffs' expert has confirmed that this is a reasonable estimate. Oliver Dec ISO Fees at ¶ 15.  By negotiating a settlement that includes injunctive relief and meaningful permanent cybersecurity changes, Class Counsels' work generated benefits beyond the cash settlement fund. *Vizcaino II*, 290 F. 3d at 1048-50.

---

4 Class members will be eligible to receive two years of free credit monitoring and restoration services with a retail value of $238.80. Declaration of Justin Parks in Support of Motion for Preliminary approval "Parks Dec." ECF 42-11 at ¶ 18-19; SA at ¶ 4.1. The retail value of these services is the proper measure to consider given that it represents the benefit to class members who will not have to purchase these services on the retail market. *See., e.g., In re Equifax Customer Data Sec. Breach Litig.,* 2020 U.S. Dist. LEXIS 118209, *255 (N.D. Ga. Mar. 17, 2020) ("Courts have often recognized the benefit of credit motoring, use its retail cost as evidence of value, and consider that value in awarding fees.").

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES,
EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

Class Counsel also designed and helped implement an efficient, straightforward, and simple notice and claims program, including working with the Claims Administrator to launch a dedicated website, direct email notice, and staffing of dedicated email addresses and toll-free hotline to facilitate class member participation and understanding of the settlement, further increasing the value delivered to the class. Oliver Dec. ISO Fees at ¶ 8.

### 2.        Further litigation presented significant risks and novel issues.

Where litigation might result in no recovery at all, the risk of further litigation is a significant factor in evaluating fees. *See In Re Omnivision*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2007). In this case, Settlement Class members faced a realistic risk of nonrecovery for several reasons.

First, Settlement Class members faced the risk of no recovery at all had Class Counsel not pursued the litigation because no other counsel pursued class claims against Minted related to the May 2020 data breach. It is unlikely other counsel would have filed an action given that no other counsel has done so in the fourteen months since the data breach.

Second, class members faced the threat of forced individualized arbitration, which Minted planned to compel. Serino Dec. ISO PA at ¶ 24. Although Plaintiffs contend arbitration is not required pursuant to California Civil Code § 1798.192, the absence of an agreement and various other defenses, they acknowledge arbitration was a significant threat given the federal policy favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); Serino Dec. ISO PA at ¶ 24-26. Had Minted succeeded in compelling individualized arbitration, few class members would have obtained recovery.

Third, class members faced many additional legal hurdles in addition to the arbitration issue, including class certification, summary judgment, discovery disputes, *Daubert* motions and

other pre-trial motions, and surmounting numerous technical issues requiring expert testimony. *See, e.g., Anthem*, 327 F.R.D. at 317 (noting that the parties would have relied on ten expert witnesses to prepare for trial had it not been for the settlement).[5]  Plaintiffs would also be required to submit acceptable theories of harm and damages, which pose additional hurdles considering the recent Supreme Court ruling in *TransUnion LLC v. Ramirez*, No. 20-297, 2021 U.S. LEXIS 3401 (June 25, 2021) (limiting standing in certain data breach cases).

Fourth, this case would likely involve complex issues of first impression if litigated through trial because it is one of only a few filed under the new CCPA. For example, Class Counsel would have to acquire through discovery a detailed understanding of Minted's internal cybersecurity configurations and the facts and circumstances that led to the data breach to show that Minted failed to implement and maintain reasonable security measures under the CCPA, a largely undefined standard at this stage. *See* Cal. Civ. Code §1798.150.

Fifth, class members face several substantive legal hurdles before recovering a judgment. They must certify the class, which is far from certain given the rapidly changing and divergent caselaw on class certification in data breach cases.[6] Even if certification is granted, class members must succeed at summary judgment, trial, and post-trial appeals, all of which will substantially

---

5 *See also*, *e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig., No. 16-MD-02752-LHK,* 2020 U.S. Dist. LEXIS 129939, at *45 (N.D. Cal. July 22, 2020) (discussing Yahoo's efforts to exclude plaintiffs' expert damage models); *Adkins v. Facebook, Inc.,* 424 F. Supp 3d 686 (N.D. Cal. 2019) (declining to certify damages class in data breach case).

6 *See, e.g., Adkins,* 424 F. Supp 3d 686 (declining to certify damages class in data breach case); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig*., 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action for lack of predominance); *Fero v. Excellus Health Plan, Inc.,* 502 F. Supp. 3d 724 (W.D.N.Y. 2020) (granting certification in data breach action of injunctive class and denying certification for damages class); *In re Brinker Data Incident Litig*., No. 3:18-cv-686-TJC-MCR, 2021 U.S. Dist. LEXIS 71965 (M.D. Fla. Apr. 14, 2021); (granting class certification for negligence claim, deferring decision on class certification for breach of implied contract claim, and narrowing the proposed class definition sua sponte).

9

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

delay recovery regardless of outcome. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 322-23 (granting final approval in data breach case because, *inter alia*, "recovery would be delayed by the time needed to resolve motions for class certification and summary judgment, conduct a trial, and possibly defend against any appeals"). For all these reasons, Class Counsel negotiated and delivered an excellent result for the class, especially when considered alongside the risks and delays associated with ongoing litigation.

### 3.      Class Counsel bore risk by accepting a contingency fee case.

"Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk they might have been paid nothing for their work." *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, at *8 (N.D. Cal. June 27, 2014). This concept is in accord with the so-called "market rate" method, which asks "what the lawyer would have received if he [or she] were selling his services in the market rather than being paid by court." *In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 568 (7th Cir. 1992) (Posner, J.); *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash. 2001). If the market rate is a contingent fee, then "class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome." *In re Continental Illinois Sec. Litig.,* 962 F.2d at 572.

Here, Class Counsel assumed the risk of representing the settlement class on a completely contingent basis in a litigation involving novel law with rapidly evolving jurisprudence. This representation included advancing non-recoverable expenses such as expert consultation and mediation fees. Oliver Dec. ISO Fees at ¶ 12. Such assumption of risk justifies a fee paid as a percentage of recovery, as is common in contingency fee cases. *See, e.g., In Re Omnivision*, 559

F. Supp. 2d at 1408. Due to the novel and complex issues presented and the risk and the expense of litigating a class action, a contingent fee equal to one-third of any recovery would be standard in a non-class case. Class Counsel are requesting a fee that is less than one-quarter of the total monetary recovery, which is inherently reasonable.

### 4.        Class Counsel delivered a high level of skill and experience.

Effort and skill associated with class counsels' representation is also considered when determining a proper fee. *Vizcaino II*, 290 F.3d at 1048; *In Re Omnivision*, 559 F. Supp 2d at 1047. Here, Class Counsel has decades of experience litigating complex and class actions, which proved invaluable in negotiating and achieving the excellent recovery for class members.

The two attorneys spearheading this litigation are Jennifer Oliver of MoginRubin LLP and Natasha Serino of Schack Law Group. Ms. Oliver is a complex litigator and IAPP-certified Information Privacy Professional with nearly ten years of experience handling antitrust matters, consumer class actions, and complex commercial litigation. Ms. Oliver has twice been named as one of the Top 40 Attorneys Under 40 in California by the Daily Journal.  Her firm, MoginRubin LLP, is known for leadership and success in *Containerboard Products Antitrust Litigation* and *Dynamic Random Access Memory (DRAM) Antitrust Litigation*. Oliver Dec. ISO PA at ¶ 28. Likewise, Ms. Serino has successfully represented aggrieved consumers, employees, and tort victims, including as lead trial counsel against Alaska Airlines, which resulted in one of the top ten bench awards in the country for 2019. *See Gunther v. Alaska Air Group, Inc.*, No. 37-2017-00037849-CU-OE-NC, 2019 WL 8402163 (Cal.Super. Sep. 4, 2019), (resulting in a $25 million judgment for flight attendants). Serino Dec. ISO PA at ¶ 30.

### 5.        The requested fees are reasonable under the lodestar cross check.

In evaluating the reasonableness of a percentage-based fee request courts may also choose to conduct a lodestar cross check. *See Resnick v. Frank (In Re Online DVD-Rental Antitrust Litig.)*, 779 F.3d 934, 949 (9th Cir. 2015) (finding that the lodestar crosscheck can confirm that a percentage of recovery method does not result in exorbitant hourly rate). In doing so, the Court may rely on submissions from counsel rather than review line by line billing records. *Bellinghausen v. Tractor Supply Co.,* 306 F.R.D. 245, 264 (N.D. Cal. 2015) (accepting sworn declaration in lieu of billing records to conduct lodestar crosscheck).

The multiplier is reached by diving the total fees sought by the amount of lodestar. "The purpose of this multiplier is to account for the risk class counsel assumes in taking on a contingency fee case." *Id.* If the lodestar multiplier falls within an acceptable range, a finding that the fee request is reasonable is supported. *Vizcaino II*, 290 F. 3d at 1051. The generally accepted multiplier in contingent fee cases varies is generally between 2 and 4, *Stern v. New Cingular Wireless Servs.*, No. 8:09-cv-01112-CAS (AGRx), 2010 U.S. Dist. LEXIS 151037 (C.D. Cal. Nov. 22, 2010), at *9, but can range as widely as .6 to 8.5. *Vizcaino II*, 290 F. 3d at 1047-48 (collecting cases).

Here, MoginRubin has submitted a lodestar of $564,047 after customary write-offs and based on hourly rates at the outset of the litigation, Oliver Dec. ISO Fees at ¶ 10, and the Schack Law Group has submitted a total lodestar of $189,737.50 after customary write-offs and based on hourly rates at the outset of the litigation, Serino Dec. ISO Fees at ¶ 9, for a total class counsel lodestar of $753,784.50. When the total fee request is divided by the total lodestar, the resulting multiplier is 1.575, well within the accepted range. As explained in Class Counsels' accompanying declarations, they are experienced class action litigators and have utilized their actual and customary hourly billing rates. Oliver Dec. ISO Fees at ¶ 10-11; Serino Dec. ISO Fees at ¶ 10. These rates, which range from $1,000 to $750 for partners, $650 to $505 for associates/non-

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

partners, and $275 to $155 for paralegals, are reasonable and comparable to the rates for other law firms performing similar work in similar geographic markets.[7] For all these reasons, the lodestar cross-check supports a finding that Class Counsels' fee request is reasonable, especially in light of the excellent results obtained, the contingent nature of Class Counsels' representation, and the level to skill and expertise Class Counsel delivered for the class.

## IV.     THE REQUESTED EXPENSES ARE REASONABLE

Class Counsel also seeks approval and reimbursement of $12,462.95 in expenses incurred in the prosecution of this action. Oliver Dec. ISO Fees at ¶ 12. All of these expenses are the type normally billed by counsel to clients in the ordinary course of litigation, for example expert consultants, mediation fees, and legal research fees. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). A testament to the efficient nature of Class Counsels' representation, $12,462.95 in expenses is extraordinarily low for a settlement in the data breach context. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 129939, at *163 (approving award of roughly $1.5 million in costs and expenses).[8] Notwithstanding these comparatively low fees, Class

---

[7] For example, in the *In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696-SRB, 2020 U.S. Dist. LEXIS 70837, at *22 (D. Ariz. Apr. 21, 2020), hourly rates for partners ranged from $495 to $1035, with most in the $700 to $800 range; hourly rates for associates/non-partner attorneys ranged from $250 to $550, with most in the $400 to $550 range; hourly rates for paralegals ranged from $158 to $325, with most falling in the $200-$300 range. In *In re Anthem, Inc. Data Breach Litig.*, 2018 U.S. Dist. LEXIS 140137, at *168, the court approved rates ranging from $400 to $970 and *In re High-Tech Employee Antitrust Litigation*, No. 11-CV-02509-LHK, 2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sep. 2, 2015). Likewise, in *Parsons v. Kimpton Hotels and Rest. Grp. LLC*, 3:16-cv-05387-VC (Chhabria, V.) at ECF 113-1 (N.D Cal. May 8, 2019), hourly rates for partners ranged from $650 to $950; hourly rates for associates/non-partner attorneys ranged from $450 to $864; hourly rates for paralegals ranged from $185 to $194.

[8] *See also In re Anthem, Inc. Data Breach Litig.*, 2018 U.S. Dist. LEXIS 140137, at *168 (approving more than $2 million in costs and expenses); *In re Banner Health Data Breach Litig.*, 2020 U.S. Dist. LEXIS 70837, at *22 (approving $278,556.04 in costs and expenses); *In re Experian Data Breach Litig.*, No. SACV 15-01592 AG (DMFx), 2019 U.S. Dist. LEXIS 81243, at *31 (C.D. Cal. May 10, 2019) (approving $152,854.28 in costs and expenses).

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

Counsel also waived over $4,683.90 in research costs as a courtesy to the class. *See* Serino Dec. ISO Fees at ¶ 11. Plaintiffs submit that these expenses are reasonable and should be reimbursed.

## V.   THE REQUESTED SERVICE AWARDS ARE WARRANTED

Service awards for named plaintiffs are meant to encourage class representatives to undertake the significant responsibilities of representing the class and to recognize the time, effort, and risk they undertook in accepting that responsibility. *Rodriguez v. West Publ'g Group,* 563 F.3d 948, 958-59 (9th Cir. 2009). Service awards are warranted where class representatives have assisted Class Counsel for the benefit of the class despite making personal sacrifices to do so. *Id.*

Five thousand dollars is a well-recognized benchmark for class representative service awards in the Ninth Circuit, in recognition of the time, effort and expense they incurred pursuing claims against Defendant. *See, e.g., In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947-948; *In re Yahoo Mail Litig.,* No. 13-cv-4980-LHK, 2016 U.S. Dist. LEXIS 115056, *14 (N.D. Cal. Aug. 25, 2016). Here, Ms. Atkinson and Ms. Renvall accepted their responsibilities as class representatives admirably and gave their time on behalf of the class, including preserving documents and providing Class Counsel with relevant information on their relationship with Minted and experiences following the breach, analyzing their history of accounts with Minted, and preparing to sit for depositions in November 2020.[9] Plaintiffs therefore submit that the requested service awards are reasonable and warranted and request that they be approved.

---

9 Declaration of Katie Renvall in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards dated July 12, 2021; Declaration of Melissa Atkinson in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards dated July 12, 2021.

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**

Respectfully Submitted,

Dated:  July 16, 2021                    By: _____ */s/Jennifer M. Oliver*_____

                                      **MOGINRUBIN LLP**
Daniel J. Mogin (SBN 95624)
Jennifer M. Oliver (SBN 311196)
Timothy Z. LaComb (SBN 314244)
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

**SCHACK LAW GROUP**
Alexander M. Schack (SBN 99126)
Natasha N. Serino (SBN 28471)
Shannon F. Nocon (SBN 316523)
16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
Tel: (858) 485-6535
Fax: (858) 485-0608
alexschack@schacklawgroup.com
natashaserino@schacklawgroup.com
shannonnocon@schacklawgroup.com

*Class Counsel for Plaintiffs*

**CORRECTED NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; CASE NO. 3:20-CV-03869-VC**