**MOGINRUBIN LLP**
Daniel J. Mogin, Esq., Bar No. 95624
Jennifer M. Oliver, Esq., Bar No. 311196
Timothy Z. LaComb, Esq., Bar No. 314244
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel: (619) 687-6611
Fax: (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

**SCHACK LAW GROUP**
Alexander M. Schack, Esq., Bar No. 99126
Natasha N. Serino, Esq., Bar No. 284711
Shannon F. Nocon, Esq., Bar No. 316523
16870 West Bernardo Drive, Suite 400
San Diego, CA 92127
Tel: (858) 485-6535
Fax: (858) 485-0608
alexschack@schacklawgroup.com
natashaserino@schacklawgroup.com
shannonnocon@schacklawgroup.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA ATKINSON AND KATIE RENVALL, INDIVIDUALLY AND ON BEHALF OF CLASSES OF SIMILARLY SITUATED INDIVIDUALS,<br><br>       Plaintiffs,<br> v.<br><br>MINTED, INC.,<br><br>       Defendant. | Case No.: 3:20-cv-03869-VC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: December 2, 2021<br>Time: 10:00 a.m.<br>Judge: Hon. Vince Chhabria<br>Courtroom: 4-17 |

PLEASE TAKE NOTICE THAT Plaintiffs Melissa Atkinson and Katie Renvall, individually and on behalf of a class of similarly situated individuals ("Plaintiffs"), move this Court to grant Plaintiffs' Motion for Final Approval of Class Action Settlement. Hearing on this motion will be held on December 2, 2021, at 10:00 a.m., via Zoom webinar before the Honorable Vince Chhabria, San Francisco Courthouse, 450 Golden Gate Avenue, Seventeenth Floor, Courtroom 4, San Francisco, California.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). Plaintiffs respectfully request that the Court finally approve the parties' Settlement Agreement and for entry of an Order that:

- o Finally approves the Settlement Agreement;

- o Grants class certification of the following proposed settlement class under Federal Rule of Civil Procedure 23(b)(3):

  > All residents of the United States who had a Minted online account, or provided Minted their name, email address, street address and/or other personal information via email, the Minted website, or other online communications, on or before June 27, 2020.

  > The Settlement Class specifically excludes: (i) Minted and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who have provided Minted with an express release of claims arising out of or related to the Security Incident prior to the Effective Date of this Settlement.

- o Finally approves the settlement as fair, reasonable and adequate, and in the best interests of the Settlement Class under Federal Rule of Civil Procedure 23;

- o Finally approves the Notice Program as implemented;

- o Finally appoints A.B. Data Ltd. as the Notice and Claims Administrator;

- o Finally appoints Melissa Atkinson and Katie Renvall as Settlement Class Representatives;

- o  Finally appoints Jennifer M. Oliver of MoginRubin LLP and Natasha N. Serino of Schack Law Group as Class Counsel;

- o  Overrules any objections;

- o  Sets a schedule for the Post-Distribution Accounting, and payment of any withheld attorneys' fees;

- o  Waives the withholding of any attorneys' fees granted at final approval until after the Post-Distribution Accounting has been filed as would otherwise be required pursuant to the Standing Order for Civil Cases before Judge Vince Chhabria at 16-17;

- o  Approves the proposed judgment; and

- o  Grants further relief as the Court deems just and proper.

Plaintiffs' Motion is based on this Notice and Motion, the accompanying Memorandum of Points and Authorities and all attachments and supporting exhibits thereto, the pleadings, records, and other papers filed in this action. Plaintiffs propose the following deadlines:

| **Event** | **Date** |
|---|---|
| Payment Distribution and Notification to Class Members Re Activation of Credit Services | Will commence at least 60 days from the Final Approval Order |
| Conclusion of Payment Distribution and Notification to Class Members Re Activation of Credit Services | 90 days from the Final Approval Order |
| Deadline to File Post-Distribution Accounting | 111 days from the Final Approval Order |

Dated: November 1, 2021

By: _____ /s/ Natasha N. Serino _____

**MOGINRUBIN LLP**
Daniel J. Mogin, Esq., (SBN  95624)
Jennifer M. Oliver Esq., (SBN  311196)
Timothy Z. LaComb Esq., (SBN 314244)
600 West Broadway, Suite 3300
San Diego, CA 92101
Tel:    (619) 687-6611

Fax:    (619) 687-6610
dmogin@moginrubin.com
joliver@moginrubin.com
tlacomb@moginrubin.com

**SCHACK LAW GROUP**
Alexander M. Schack, Esq., (SBN 99126)
Natasha Serino, Esq., (SBN 284711)
Shannon F. Nocon, Esq., (SBN 316523)
16870 West Bernardo Drive, Suite 400
San Diego, California 92127
Telephone: (858) 485-6535
Facsimile: (858) 485-0608
alexschack@schacklawgroup.com
natashaserino@schacklawgroup.com
shannonnocon@schacklawgroup.com

Attorneys for Plaintiffs and
Proposed Class Counsel

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT**

**Table of Contents**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF THE LITIGATION ................................................................. 2

III.  THE SETTLEMENT TERMS ........................................................................... 3

    A.    Summary of the Settlement ........................................................................ 3

    B.    The Settlement Class .................................................................................. 4

    C.    The Settlement Fund .................................................................................. 5

    D.    Business Practice Changes ......................................................................... 6

    E.    Class Notice ................................................................................................ 7

    F.    Claim Form and Claim Process .................................................................. 8

    G.    Attorneys' Fees, Costs, and Expenses ....................................................... 9

    H.    Service Awards ........................................................................................... 9

    I.    Release of Claims ..................................................................................... 10

IV.   SETTLEMENT CLASS MEMBERS' RESPONSE .......................................... 10

V.    THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE ............... 11

    A.    The Proposed Settlement Class Should be Certified ................................ 12

      i.    The Class Meets the Requirements of Rule 23(a) ............................. 12

      ii.   The Class Meets the Requirements of Rule 23(b)(3) ....................... 13

    B.    The Court Should Grant Final Approval .................................................. 14

      i.    The Strength of Plaintiffs' Case ....................................................... 15

ii.    The Risk, Expense, Complexity and Duration of Further Litigation .................................. 16

iii.   The Risk of Maintaining Class Action Status Throughout Trial .................................. 17

iv.   The Amount Offered in Settlement..................................................................... 17

v.    The Extent of Discovery and the Stage of the Proceedings ............................................ 20

vi.   The Experience and Views of Counsel ........................................................ 21

vii.   The Presence of a Government Participant ................................................... 22

viii.  The Reaction of Class Members to the Proposed Settlement ...................................... 22

ix.   The Proposed Settlement is Non-Collusive .................................................... 23

C.    The Notice Program Was Appropriate ................................................................ 23

D.    Final Appointment of Settlement Class Counsel............................................................ 25

VI.  CONCLUSION .......................................................................................... 25

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL
APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

## Table of Authorities

**CASES**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.,*

No. 3:16-cv-05486-JCS, 2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ......................... 24

*Adkins v. Facebook,*

424 F.Supp.3d 686 (N.D. Cal. 2019) .............................................................. 17

*AT&T Mobility LLC v. AU Optronics Corp.,*

707 F.3d 1106 (9th Cir. 2013) ...................................................................... 14

*AT&T Mobility LLC v. Concepcion,*

563 U.S. 333 (2011) ................................................................................. 16

*Betancourt v. Advantage Hum. Resourcing, Inc.,*

No. 14-CV-01788-JST, 2016 WL 344532 (N.D. Cal., Jan. 28, 2016) ............................ 19

*Browning v. Yahoo! Inc.,*

No. C04-01463 HRL, 2007 WL 4105971 (N.D. Cal., Nov. 16, 2007) ............................ 15

*Churchill Vill., L.L.C. v. General Elec.,*

361 F.3d 566 (9th Cir. 2004) ................................................................... 15, 22

*Custom LED, LLC v. eBay, Inc.,*

No. 12-cv-00350-JST, 2014 WL 2916871 (N.D. Cal. June 24, 2014) ............................ 22

*Dohrman v. Intuit, Inc.,*

823 Fed.App'x. 482 (9th Cir. 2020) ............................................................... 21

*Garner v. State Farm Mut. Auto. Ins. Co.,*

No. CV08-1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .................... 23

*Gergetz v. Telenav, Inc.,*

No. 16-cv-04261-BLF, 2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ......................... 24

*Gunther v. Alaska Air Group, Inc.,*

No. 37-2017-00037849CU-OE-NC, 2019 WL 8402163 (Cal.Super. Sep. 4, 2019) .......... 22

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL
APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ........................................................................ 13

*Hesse v. Sprint Corp.*,

    598 F.3d 581 (9th Cir. 2010) .......................................................................... 10

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018) ............................................................. passim

*In re Anthem, Inc. Data Breach Litig.*,

    No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ......... 16

*In re Anthem, Inc. Data Breach Litig.*,

    No. 5:15-md-02617-LHK (N.D. Cal., April 18, 2018) ................................ 8, 9

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

    No. 3:08-MD-01998, 2010 WL 3341200 (W.D. Ky., Aug. 23, 2010) ............. 18

*In re Google Plus Profile Litig.*,

    No. 5:18-cv-06164-EJD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ........... 23

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,

    851 F.Supp. 2d 1040 (S.D. Tex. 2012) .......................................................... 18

*In re Linkedin User Privacy Litig.*,

    309 F.R.D. 573 (N.D. Cal. 2015) ...................................................... 12, 14, 18

*In re Mego Fin. Corp. Sec. Litig.*,

    213 F.3d 454 (9th Cir. 2000) .................................................................. 13, 20

*In re Mercury Interactive Corp. Sec. Litig.*,

    618 F.3d 988 (9th Cir. 2010) ............................................................................ 9

*In re Omnivision Techs., Inc.*,

    559 F.Supp.2d. 1036 (N.D. Cal. 2007) ........................................................... 21

*In re Online DVD-Rental Antitrust Litig.*,

    779 F.3d 934 (9th Cir. 2015) .......................................................................... 10

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL
APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

*In re Target Corp. Customer Data Sec. Breach Litig.*,

 No. MDL No. 14-2522 (PAM), 2017 WL 2178306 (D. Minn. May 17, 2017)................. 18

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,

 No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga., Aug. 23, 2016) ..................... 18

*In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*,

 No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal., July 22, 2020) ...... 12, 14, 16, 18

*In re Zappos.com, Inc.*,

 888 F.3d 1020 (9th Cir. 2018) ......................................................................... 16

*Johnson v. Quantum Learning Network, Inc.*,

 No. 15-CV-05013-LHK, 2017 WL 747462 (N.D. Cal., Feb. 27, 2017)........................... 15

*Just Film, Inc. v. Buono*,

 847 F.3d 1108 (9th Cir. 2017) ....................................................................... 13

*Noll v. eBay, Inc.*,

 309 F.R.D. 593 (N.D. Cal. 2015) .................................................................... 24

*Rodriguez v. Hayes*,

 591 F.3d 1105 (9th Cir. 2010) ....................................................................... 13

*Rodriguez v. W. Publ'g Corp.*,

 563 F.3d 948 (9th Cir. 2009) ............................................................... 13, 17, 23

*Schneider v. Chipotle Mexican Grill, Inc.*,

 336 F.R.D. 588 (N.D. Cal. 2020) .................................................................... 22

*Stovall-Gusman v. W.W. Granger, Inc.*,

 No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 1, 2015)........................... 19

*Sugarman v. Ducati N. Am., Inc.*,

 No. 5:10-cv-05246-JF, 2012 WL 113361 (N.D. Cal. Jan. 12, 2012) ................................ 22

*Torrisi v. Tucson Elec. Power Co.*,

 8 F.3d 1370 (9th Cir. 1993) ........................................................................... 24

*Vasquez v. Coast Valley Roofing, Inc.*,

    266 F.R.D. 482 (E.D. Cal. 2010) ................................................................. 12, 14

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011) ............................................................................................ 12

*Wash. Mut. Bank, FA v. Super. Ct.*,

    24 Cal.4th 906 (2001) ......................................................................................... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*,

    617 F.3d 1168 (9th Cir. 2010) ............................................................................ 14

**STATUTES**

California Civil Code § 1798.192 ..................................................................................... 16

**RULES**

Fed. R. Civ. P. 23 .................................................................................................... passim

Fed. R. Civ. P. 26 ....................................................................................................... 3, 21

N.D. Cal. Procedural Guidance for Class Action Settlements............................... passim

Standing Order for Civil Cases before Judge Vince Chhabria ........................... 7, 8, 9, 10

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL**
**APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

Plaintiffs Melissa Atkinson and Katie Renvall (collectively "Plaintiffs" or "Class Representatives"), individually and on behalf of all persons similarly situated (the "Class"), respectfully submit this Notice of Motion and Memorandum of Points and Authorities in support thereof, to be heard on December 2, 2021 at 10:00 am, respectfully requesting the Court enter an order granting final approval of the class action settlement described herein.

## I.    INTRODUCTION

On May 14, 2021, the Court granted Plaintiffs' motion for preliminary approval of a $5,000,000 proposed Settlement to provide Class Members with cash compensation, credit monitoring, and identity restoration services and to require defendant to implement cybersecurity improvements. After a robust direct notice campaign and an overwhelmingly positive response – with no objections – the Settlement now comes before the Court again, this time for final approval.

In mid-2020, Minted was the target of a cyberattack that resulted in the theft of approximately 4.198 million customers' personal information. After a year of litigation and in advance of Minted's motion to compel arbitration, the parties reached a settlement that guarantees relief for all Settlement Class Members, in the form of monetary compensation and mandatory security changes. Among other things, the Settlement establishes a non-reversionary $5,000,000 fund to provide participating Settlement Class Members with cash compensation and credit services.[1] The settlement warrants final approval because it provides above-average monetary compensation based on per capita numbers, valuable nonmonetary class relief, meaningful security changes, and timely relief when the putative class faced the risk individual arbitration. The positive reaction of Settlement Class Members further supports final approval because participation was nearly double the anticipated rate and no one objected. Declaration of Mark Cowen ("Cowen Dec.") at ¶ 43.

Based on per capita numbers, the proposed fund is more than double other approved data breach settlements. Given the claims rate, participating Class Members will receive an estimated $22.01 payment and two years of credit monitoring services, which retail for approximately $9.95 per month. Cowen Dec. at ¶ 28, 48. The estimated $22.01 cash payments are less than the

---

[1] Declaration of Natasha Serino ("Serino Dec."), Exhibit ("Ex.") A (Settlement Agreement) at ¶ 2.2, 3.3, 4.1. The Settlement Agreement is attached to the Serino Dec. as Exhibit A. The Settlement Agreement shall hereafter be referred to as "SA", "Settlement" or "Settlement Agreement."

$43.00 payments previously anticipated because of significantly higher-than-anticipated (or typical) participation, which further evidences the positive response to the Settlement. Under the Settlement, Class Members subject to identity theft can also obtain fraud resolution assistance to dispute transactions, mediate calls with merchants, and implement fraud alerts. *Id*. at ¶ 29.

In addition, Minted must implement a host of business practice changes to prevent future exfiltration of consumer data and address security weaknesses believed to have contributed to the breach. See SA at ¶ 6.2 – 6.13. These measures, which were vetted by Plaintiffs' expert, include enhancing password protection, implementing a policy regarding minimizing retention of customers' personally identifiable information ("PII"), conducting risk-based security monitoring, implementing safeguards to identify external threats, and undergoing two annual audits. *Id*. The nonmonetary relief, including enhanced security, credit monitoring, and identity restoration services, will provide important security benefits now, when they are most critical for the Class. *See* Declaration of Matthew Strebe ("Strebe Dec.") at ¶ 9. To this end, the efficient resolution of this matter provides for speedy relief for the class, helps prevent future theft of consumers' PII, and avoids the possibility of individual arbitration, which Minted planned to seek. Plaintiffs therefore strongly believe the Settlement is favorable to the class. In addition, the Notice Program satisfied due process requirements through direct notice to 95.45% of Settlement Class Members and a supplemental digital campaign. Cowen Dec. at ¶ 13.  Throughout this process no Class Members objected and only 12 (or 0.00029%) opted out. Cowen Dec. at ¶ 58; Serino Dec. at ¶ 45.

Accordingly, Plaintiffs respectfully request that the Court finally approve the parties' Settlement Agreement and enter an order that: (1) finally certifies the Settlement Class under Rule 23(b)(3); (2) approves the Settlement as fair, reasonable, and adequate under Rule 23(e); and (3) finds that the Notice Program satisfied the due process rights of the Settlement Class such that the Court may exercise jurisdiction over it.

## II.    SUMMARY OF THE LITIGATION

In May 2020, Plaintiffs began investigating a cybersecurity incident involving Minted and a hacking group known as Shiny Hunters. Serino Dec. at ¶ 3; Declaration of Jennifer Oliver ("Oliver Dec.") at ¶ 3. In June 2020, after sending notice pursuant to California Consumer Privacy

Act § 1798.150, Plaintiffs filed the instant action against Minted, Inc. ("Minted") with regard to the data breach incident. Complaint, ECF 1 at ¶ 1; Serino Dec. at ¶ 3, 6, 8; Oliver Dec at ¶ 7 – 8. Plaintiffs asserted claims under California's Consumer Privacy Act, the Unfair Competition Law, and negligence. ECF 1 at ¶ 73 – 93. In July 2020, having received no response to the CCPA letter, Plaintiffs filed an amended complaint seeking statutory penalties, as well as declaratory and injunctive relief. First Amended Complaint ("FAC"), ECF 12 at ¶ 77 – 84.

Over the next month, Plaintiffs investigated legal issues related to Minted's anticipated motion to compel arbitration and complied with disclosure requirements under Fed. R. Civ. P. 26. Oliver Dec. at ¶ 11 – 13. On September 1, 2020, the parties filed a joint case management statement and Rule 26(f) report in which Plaintiffs outlined various discovery they planned to seek as part of Minted's motion to compel arbitration. ECF 23 at 7 – 8. On September 11, 2020, per the Court's order following the case management conference, the parties filed a stipulation regarding a schedule for arbitration-related discovery. ECF 25; Serino Dec. at ¶ 12. Over the next three months, the parties engaged in early-stage filings, letter briefs, and a contentious dispute over arbitration discovery. Oliver Dec. at ¶ 15 – 16. As part of this process, the parties exchanged certain information and Plaintiffs prepared to sit for deposition on November 20, 2020. *Id.* The parties then agreed to engage in mediation. *Id.* at ¶ 17 – 18.

On December 1, 2020, the Court granted the parties' stipulation to stay deadlines pending mediation. ECF 35 at 2. On January 5, 2021, the parties engaged in an arm's-length, remote, day-long mediation session facilitated by Randall Wulff, Esq. Serino Dec. at ¶ 14. Although they reached a tentative agreement at mediation, it took over three months to procure and review further information regarding the breach and Minted's financials, continue negotiations over the business practice changes with expert consultation, and agree on settlement terms. *Id.* at ¶ 14 – 15. On April 15, 2021, the parties finally reached a Settlement to resolve this litigation. *Id.*

## III.   THE SETTLEMENT TERMS

### A.  Summary of the Settlement

On April 15, 2021, the parties entered into a Settlement Agreement whereby Minted agreed to establish a $5,000,000 settlement fund and implement several business practice changes to

enhance security. SA at ¶ 1.18, 2.2, 6.1 – 6.14. Under the Settlement, based on current claim rates, participating Settlement Class Members will each receive an estimated $22.01 payment. Cowen Dec. at ¶ 43, 48; Serino Dec. at ¶ 44. These payments will be less than the $43.00 payments originally estimated because participation in the Settlement was nearly double what was expected. *Id*. The Settlement also provides Settlement Class Members with free credit services including credit monitoring, fraud alerts and identity restoration services. SA at ¶ 4.1. Based on participation, the estimated retail value of the credit services is $15,463,016.40. Cowen Dec. at ¶ 28. In addition, Minted must implement certain agreed-upon cybersecurity measures at its expense, which are estimated to cost at least $1,815,000.00. Strebe Dec. at ¶ 14. These include enhanced password protection, implementation of an information security program, annual security training, and policies regarding personal information retention. SA at ¶ 6.1 – 6.13; Strebe Dec. at ¶ 14. Class Representatives seek Service Awards of $5,000 each. ECF 57 at 21. Finally, Class Counsel request $1,187, 537.05 (or 23.75%) from the Settlement Fund for attorneys' fees.

### B.  The Settlement Class

The proposed Settlement Class is defined as:  All residents of the United States who had a Minted online account, or provided Minted their name, email address, street address and/or other personal information via email, the Minted website, or other online communications, on or before June 27, 2020.[2] The proposed class includes 4,198,490 affected Minted customers nationwide. Serino Dec. at ¶ 33. Since a litigation class had not yet been certified, Plaintiffs streamlined the Settlement Class definition from the First Amended Complaint based on information obtained from Defendant. FAC, ECF 12 at ¶ 28 ("All individuals whose PII was compromised in the Data Breach.") Notwithstanding the change, the Settlement Class parallels definitions in the First Amended Complaint because the Minted accountholders as of May 6, 2020, and those who otherwise gave PII to Minted, are the "individuals whose PII was

---

[2] The Settlement Class excludes: (i) Minted and its officers and directors; (ii) all Settlement Class Members who timely and validly request to opt-out; (iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) potential class members who provided Minted with an express release of claims arising out of or related to the Security Incident prior to the Effective Date of this Settlement. SA at ¶ 1.25.

4

compromised in the Data Breach." Moreover, the Settlement Class provides a single nationwide class rather than a nationwide class and a California class. *See* N.D. Cal. Procedural Guidance for Class Action Settlements ("Class Action Guidance"), Preliminary Approval 1(a); FAC, ECF 12 at ¶ 28. The class is easily identifiable because the breach affected Minted's user database, which contains the PII of all persons who were Minted account holders or provided Minted with PII on or before June 27, 2020. To this end, following preliminary approval Defendant provided an email list of Settlement Class Members to the Settlement Administrator. Cowen Dec. at ¶ 11.

### C. The Settlement Fund

The proposed Settlement requires Minted to pay $5,000,000 into a Qualified Settlement Fund. SA at ¶ 1.18, 2.2. The Settlement funds will be used to (1) provide monetary compensation to the settlement class; (2) provide two years of free credit monitoring and identity restoration services for Class Members who elect to receive it during the claims process; (3) issue notice; (4) pay for administration costs; (5) provide for class representative incentive payments in the amount of $5,000 each to Katie Renvall and Melissa Atkinson; (6) pay costs and attorneys' fees up to $1,200,000 (less than the 25% benchmark rate); and (7) cover any necessary taxes and fees. *Id.* at ¶ 2.3. There shall be no reversion of settlement funds to Minted or Class Counsel. *Id.* at ¶ 2.4. On or about May 7, 2021 Minted deposited $5,000,000 into a Qualified Settlement Fund at Huntington Bank per the Court's preliminary approval order. Serino Dec. at ¶ 19.

Based on the claims rate, participating Settlement Class Members will receive estimated payments of $22.01. Cowen Dec. at ¶ 48. At their election, Settlement Class Members could also choose to receive credit services provided by Equifax during the claim process. SA at ¶ 4.1. The credit services include two years of free credit monitoring with a retail value of $238.80 and personal identity restoration services for Settlement Class Members who are or become the victim of identity theft. Cowen Dec. at ¶ 28 – 29; SA at ¶ 4.1. These services include assistance with disputing transactions, preparing paperwork, implementing fraud alerts, and negotiating with banks and other third parties. Cowen Dec. at ¶ 29. By structuring relief in this way, the Settlement guarantees recovery for all participating Class Members, instead of only those with documented losses. Because the Settlement Class is easily identifiable, Claims did not require documentation

of loss, thereby minimizing administration costs, maximizing class payments and encouraging participation. In fact, the rate of claims for payment was almost double the anticipated rate and the rate of claims for credit services was nearly eight times the predicted rate.  Cowen Dec. at ¶ 43 – 44.

### D.  Business Practice Changes

As part of the Settlement, Minted must also implement several cybersecurity measures to address weaknesses believed to have contributed to the May 2020 breach. These measures will be paid for solely by Minted and not from the Settlement Fund, and are estimated to cost at least $1,815,000.00. Strebe Dec. at ¶ 14; SA at ¶ 6.1. The changes include (1) maintaining an information security program to identify security risks to users' PII and implement security protections; (2) changing Minted's policies regarding retention of customers' PII to avoid maintaining it beyond an appropriate retention period; (3) providing annual security training to all employees and training on secure coding practices for its software developers; (4) increasing password protection, including increased frequency of salting and hashing; (5) implementing an application to filter, monitor and block HTTP traffic to protect against attacks; (6) conducting risk-based monitoring of security events and maintaining risk-based vulnerability scanning processes; (7) enhancing security features for its software coding repository; (8) implementing a patch management process to ensure security patches are up-to-date on company-owned workstations and servers; and (9) enhanced security requirements for vendors in possession of Minted data. SA at ¶ 6.2 – 6.12. Minted must also conduct a cybersecurity audit to ensure compliance with SOC 2 Type 1 standards within a year of Final Judgment and a follow-up audit one year later. *Id*. at ¶ 6.13.

Plaintiffs negotiated these measures in consultation with security professionals and they represent significant improvements in Minted's security practices. Strebe Dec. at ¶ 10 – 13; Oliver Dec. at ¶ 21, 23. The security fortifications required by the Settlement are sufficient to prevent a recurrence of this breach and reduce future risks. Strebe Dec. at ¶ 10. Accordingly, these non-monetary business practice changes enhance the value of the Settlement, represent a nearly $2 million financial investment by Minted and add to the relief afforded to the Settlement Class Members. By coupling these security enhancements with the monetary benefits, the Settlement Agreement provides renewed confidence that Minted will prospectively protect consumer data.

### E. Class Notice

Plaintiffs provided notice via methods that are appropriate for class members, all of which are Minted e-commerce customers. Given that Minted had email addresses for its customers, the Notice Program included successfully delivered direct email notice to 95.45% of Settlement Class Members. SA at ¶ 7.1 – 7.2; Cowen Dec. at ¶ 13. To supplement the direct notice and reach Class Members with undeliverable emails, the plan included a social media campaign narrowly targeted at Settlement Class Members through digital ads via the Google Display Network, Facebook and Instagram platforms. SA at ¶ 7.2; Cowen Dec. at ¶ 15. This campaign sought to bolster the effectiveness of email notice by providing another touchpoint for class members with over 2.6 million unique impressions. Cowen Dec. at ¶ 18 – 19. The parties also provided notice via a settlement website (www.mintedsettlement.com), a banner ad on the front page of Minted's website for 45 days linking to the settlement website, and dissemination of a press release to English and Spanish outlets, and a dedicated settlement website. SA at ¶ 7.2; Cowen at ¶ 21 – 24.

In accordance with the Court's order granting preliminary approval, the Notice and Claims Administrator, A.B. Data, commenced notice to the Settlement Class on June 14, 2021 via deployment of the Email Notice. SA at ¶ 7.2; Cowen Dec. at ¶ 13. This email included a link to the Settlement Website, where class members could access the Long-form Notice, Settlement Agreement, Claim Form and other case documents. Serino Dec, Ex. F. To ensure maximum deliverability, emails were sent in batches through June 30, 2021. Cowen. at ¶ 13. Of the over 4 million emails sent, the deliverability rate was 98.6%. *Id*. The digital media campaign expanded on this direct notice with over 2,685,813 unique impressions. *Id*. at ¶ 19.

In crafting the notice, Plaintiffs relied on the Federal Judicial Center's model notices, used plain English and avoided unnecessary acronyms. *See* Standing Order for Civil Cases before Judge Vince Chhabria ("Standing Order"), §49; Serino Dec. at ¶ 39. The notice clearly summarized the nature of the action, the terms of the agreement (including the Settlement Class definition), the relief provided, Counsel's request for fees and expenses, the scope of the release, and the binding nature of the Settlement. *Id*. at ¶ 38, Exs. C, D and F. Per the District's Procedural Guidance for Class Action Settlements, the notice included contact information for Class Counsel, the Settlement

website, and instructions to access the case docket. *Id.*, Exs. C at 9 – 10, D, F at 3. The notice also specified the date and time of the final approval hearing and advised that said date might change without notice to the class (although it remained the same). *Id.* at ¶ 38, Exs. C at 9, D, F at 2-3.

The notice also clearly advised Settlement Class Members of their right to opt out of the Settlement, summarized the procedure for doing so, and described the consequences for opting out. Serino Dec., Exs. C at 7, F at 2. The notice did not require extraneous information in order to opt out of the settlement. *See* Class Action Guidance, §4. The notice also described the procedure for objecting to the Settlement, but acknowledged only substantial compliance was required. Serino Dec., Ex. C at 7 – 8; *see* Standing Order, §49. It further explained that the requirement for written objections could be excused upon a showing of good cause, and that only substantial compliance was necessary. *See id.* Nevertheless, no objections were submitted. Serino Dec. at ¶ 45.

### F.  Claim Form and Claim Process

The Settlement provided a simple process for Settlement Class Members to electronically submit their claims without the need for copious documentation. The online claim process was accessible to the technologically oriented Settlement Class, all of which are users of Minted's e-commerce website. Settlement Class Members had 125 calendar days after preliminary approval to submit a valid claim. SA at ¶ 3.1, 4.3. The simple Claim Form required only necessary contact information and selection of relief (i.e., Payment and/or Credit Services). Serino Dec., Ex. G. Class Counsel ensured the Claim Form submission process would take less than five minutes to complete. *Id.* at ¶ 42. No burdensome information or documentation of losses was required, which encouraged participation. *Id.* As a likely result of the easy claim process, the participation rate for payment claims was nearly double the expected 2% participation rate. Cowen Dec. at ¶ 43. After elimination of duplicate and untimely submissions, the payment claims rate and overall claims rate are approximately 3.5%. *See id.* at ¶ 43 – 44. This is significantly higher than other recent data breach settlements involving documented losses. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 5:15-md-02617-LHK, ECF 1007 at 4 (N.D. Cal., April 18, 2018) and ECF 1007-6 at ¶ 2. In *Anthem*, the overall claims rate was 1.7%, with credit monitoring claims representing 1.6% and

alternative compensation claims representing just .17%. *Id.* Notably, the claim rate for out-of-pocket claims was only .0086% (6,809 out-of-pocket claims/79,150,325 total class members). *Id.*

Based on the higher-than-expected participation, the Claims Administrator estimates payments will be approximately $22.01 per claimant. Cowen Dec. at ¶ 48. To keep administration costs low and maximize class member payments, the Claims Administrator will issue payments digitally (i.e. a virtual debit debit Mastercard, Amazon credit, Target gift card, or Safeway and Albertsons gift cards), although Settlement Class Members have the option to request paper checks. Cowen Dec. at ¶ 52 – 53. For Class Members who also elect Credit Services, the Claims Administrator will send them an activation code to activate their Credit Services within 60 days of the Final Judgment date. SA at ¶ 13.1. The Claims Administrator will also provide instructions on the activation process, including via a dedicated page on the settlement website. *Id.* Through the use of direct email notice, social media marketing, and the use of digital payments, the costs of settlement administration are currently low – approximately $200,000. Cowen Dec. at ¶ 57.[3]

### G. Attorneys' Fees, Costs, and Expenses

Pursuant to the common fund doctrine, Class Counsel separately moved for an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses. ECF 57. As promised, Class Counsel sought less $1.2 million from the Settlement Fund for fees, costs and expenses – specifically $1,187,537.05 in fees and $12,462.95. ECF 57 at Dec. at 2. Counsel's fee request represents 23.75% of the Settlement fund, less than the Ninth Circuit's 25% benchmark rate. The motion was filed at least sixty-five (65) days prior to the deadline for objecting to the proposed settlement. *See* Class Action Guidance, §6; Standing Order, §49; *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-994 (9th Cir. 2010). To date, there have been no objections or oppositions to the motion. Serino Dec. at ¶ 45. The Settling Parties did not negotiate the payment of Class Counsel's attorneys' fees, costs, expenses. *Id.* at ¶ 19.

### H. Service Awards

---

3 Due to the higher-than-expected rate of claims for credit services, the cost of procuring credit monitoring is now anticipated to be $372,329.75. All other administration costs remained unchanged. Cowen Dec. at ¶ 57.

As part of its motion for reasonable attorneys' fees and costs, Class Counsel also requested the Court award Representative Plaintiffs Melissa Atkinson and Katie Renvall a service award of $5,000 each from the Settlement Fund in recognition of the time, effort and expense they incurred pursuing claims against Defendant. ECF 57 at 2. Ms. Atkinson and Ms. Renvall accepted their responsibilities as class representatives admirably and gave their time on behalf of the class, including preparing to sit for depositions. Renvall Dec. at ¶ 4; Atkinson Dec. at ¶ 4. The proposed service award is reasonable considering the Ninth Circuit's $5,000 benchmark. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-948 (9th Cir. 2015). Finally, Plaintiffs' agreement to the Settlement is not conditioned on the service award, nor are there any other conditions on the awards. *See* Class Action Guidance, §7; Atkinson Dec. at ¶ 6; Renvall Dec. at ¶ 6.

### I.    Release of Claims

In exchange for benefits under the Settlement, Settlement Class Members will release any legal claims that arise or relate to the facts alleged in the complaint.  SA at ¶ 1.20, 10.1. Class Members are only releasing claims based on the identical factual predicate. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010); Standing Order, §49. There are no differences between the released claims and the claims in the operative complaint.  See Class Action Guidance, § 1(c).

### IV.    SETTLEMENT CLASS MEMBERS' RESPONSE

The reaction to the Proposed Settlement has been overwhelmingly positive. First, the claims rates far exceeded the anticipated participation rate and the rates in similar cases.  For example, there were approximately 146,193 claims for payment (3.5%) and approximately 64,753 claims for credit services (1.5%). Cowen Dec. at ¶ 44.  Second, there were no objectors and only 12 opt-outs. *Id*. at ¶ 58. As further detailed in Section A, viii, these rates demonstrate an overwhelmingly positive reaction from Settlement Class Members. While not required for this motion, below is the current data for the post-distribution accounting to aid in the Court's review. Class Counsel will supplement this information as appropriate in its post-distribution accounting.

| POST-DISTRIBUTION ACCOUNTING INFORMATION | |
|---|---|
| Category | Number |
| Total Settlement Fund | $5,000,000.00 |
| Total Number of Class Members | 4,198,490 |
| Number of Class Members to Whom Notice Was Sent and **Not** Returned as Undeliverable | 4,007,437 (98.6% of notices sent and 95.45% of Settlement Class Members) |
| Number and Percentage of Claim Forms Submitted | 147,328 (3.5%) |
| Number and Percentage of Opt-Outs | 12 (.00029%) |
| Number and Percentage of Objections | 0 (0.0%) |
| Average and Median Recovery Per Claimant[4] | $22.01 |
| Largest and Smallest Amounts To Be Paid to Class Members[5] | $22.01 to Class Members who filed claims; $0 to Class Members who didn't file a claim |
| Methods of Notice | Direct Email and Supplemental Digital Marketing |
| Methods of Payment to Class Members | Digital payment via: (1) debit mastercard; (2) Amazon; (3) Target; or (4) Safeway/Albertsons |
| Number and Value of Checks Not Cashed | TBD |
| Amounts Distributed to Each Cy Pres Recipient | NA |
| Administrative Costs | $200,000.00 |
| Attorneys' Fees and Costs | $1,187,537.05 in fees and $12,462.95 in costs |
| Attorneys' Fees As Percentage of Settlement Fund | 23.75% |
| Multiplier (if any) | 1.575 |
| Number of Class Members Requesting Credit Services Relief | 64,753 |
| Aggregate Value of Credit Services Relief | Market Value: $15,463,016.40 Cost for Bulk Purchasing: $372,329.75 |

## V.    THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

In the preliminary approval order, the Court found that the Settlement Class sufficiently

met the requirements of Rule 23 to support preliminary certification under Rule 23(b)(3). Plaintiffs

now request the Court affirm its preliminary findings as to class certification.  The proposed

---

[4] If numbers are based on total Settlement Class Members, as opposed to those who filed claims, the largest and smallest amounts paid would be $22.01 and $0.00 respectively, and the average and median recoveries would be $0.77 and $0.00 respectively. Cowen Dec. at ¶ 49 fn 2.

settlement warrants final approval because it provides Settlement Class Members with certain compensation when the claims otherwise faced a serious risk of individualized arbitration that would have rendered them financially inviable to pursue. When, as here, the parties settle before class certification, courts must review the proposed agreement to approve both the propriety of the certification and the fairness of the settlement. The proposed class meets the certification requirements under Rule 23 and the settlement is fundamentally fair, adequate and reasonable.

### A.  The Proposed Settlement Class Should be Certified

### i.  The Class Meets the Requirements of Rule 23(a)

In order to obtain certification of a settlement class, a class action must first satisfy the four threshold requirements under Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). The proposed Settlement Class fulfills these prerequisites. First, the putative class consists of approximately 4.198 million Minted users and therefore easily satisfies the numerosity requirement. *See* Serino Dec. at ¶ 33; *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 486 (E.D. Cal. 2010) (finding that numerosity is routinely met where the class consists of more than 40 members).

The Settlement also meets the commonality requirement, which requires that class members' claims "depend upon a common contention" that is capable of classwide resolution such that, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, there are common questions arising from the data security breach that occurred on May 6, 2020 and resulted in the theft of approximately 4.198 million users' PII. *See* Serino Dec. at ¶ 3, 33. As in other data breach litigation where commonality exists, the critical question is whether Minted failed to take adequate measures to protect customers' PII. *See In re Yahoo! Inc. Cust. Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *3 (N.D. Cal., July 22, 2020); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 584 (N.D. Cal. 2015). Because the answer is uniform for all Settlement Class Members, their claims are capable of classwide resolution under *Dukes*.

Minted's inadequate data security also similarly affected its users in that all of their personal information was taken during the breach, thereby establishing typicality.  Typicality is

satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Like the rest of the Class, the Representative Plaintiffs are Minted users who provided PII to Minted, and whose PII was exfiltrated from Minted by hackers during the breach. Atkinson Dec. at ¶ 2; Renvall Dec. at ¶ 2. Plaintiffs' and Class members' names, login credentials, telephone numbers, billing addresses and shipping addresses were compromised. SA at 2. The Representative Plaintiffs therefore endured a course of conduct directed against the Class. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) (finding typicality where Plaintiff and the Class were similarly defrauded in a credit card processing scheme, even though the extent of their injuries differed). The lawsuit also challenged (and the Settlement seeks to remedy) the adequacy of Minted's data security for all Class members. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309 (N.D. Cal. 2018). Accordingly, Plaintiffs can establish typicality.

Finally, the Representative Plaintiffs will fairly and adequately protect the interests of the Class. This requirement looks at whether the plaintiffs and their counsel have any conflicts with the Class and will prosecute the action vigorously on behalf of the Class. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). In this case, all Settlement Class Members were victims of the same event and therefore no conflicts exist between the Class and the Plaintiffs. Plaintiffs are also represented by counsel with decades of experience litigating class action cases. *See* Serino Dec. at ¶ 30; Oliver Dec. at ¶ 26 – 28.  Lastly, the core terms of the settlement were negotiated with the assistance of a respected mediator thereby ensuring it was negotiated at arms-length on a non-collusive basis. *See Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

### ii.  The Class Meets the Requirements of Rule 23(b)(3)

The Class also satisfies Rule 23(b)(3) because (1) common questions predominate; and (2) the class action mechanism is superior to other available methods for the fair and efficient resolution of the matter. Fed. R. Civ. P. 23(b)(3). As to predominance, "there is clear justification for handling the dispute on a representative rather than individual basis" when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). In *Anthem*

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

and *Linkedin*, the courts recognized that the claims turned on whether the defendants properly secured customers' information. *Anthem*, 327 F.R.D. at 312; *Linkedin*, 309 F.R.D. at 584. Here, the claims also rise or fall on whether Minted employed reasonable security measures to guard user information. As in *Yahoo*, these questions would be resolved with the same evidence for all class members and depend on Minted's conduct. *Yahoo!*, 2020 WL 4212811, at *7.

In addition, choice-of-law considerations do not pose a threat to predominance. Plaintiffs asserted claims for violation of the CCPA (California Class), violation of California Unfair Competition Law (California Class), and negligence (all classes). *See* FAC, ECF 12 at ¶ 76 – 96. The common law negligence claim has universal elements (i.e., duty, breach, causation and damages) and the crux of the claim turns on the common question of whether Minted implemented reasonable data security. Defendant is also a California company headquartered in San Francisco, where it presumably makes data security decisions. As such, the conduct at issue is sufficiently tied to California such that application of its law is appropriate. *See AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1112-1113 (9th Cir. 2013). Minted is also likely to seek application of its Terms of Service, which contain a California choice-of-law provision. *See Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal.4th 906, 915-918 (2001).

The class mechanism also provides a superior method for resolution because it is the most efficient means of addressing consumers' claims. Manageability at trial is not a concern with certification of a settlement class. *Vasquez*, 266 F.R.D. at 488. Nevertheless, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Here, each of the 4,198,490 Minted users would need to address the same complex technical issues with numerous experts at significant cost. As with other data breach class settlements, these costs would far outweigh the individual amounts at stake. *See, e.g., Anthem*, 327 F.R.D. at 315. Accordingly, Plaintiffs meet all the certification requirements of Rule 23(a) and (b)(3).

### B.  The Court Should Grant Final Approval

The scope of the settlement, the risks of further litigation (or individual arbitration), and the overwhelmingly positive response from Class Members justify final approval of the Settlement.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL**
**APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

When evaluating a proposed class action settlement, the standard is whether the settlement as a whole is fundamentally fair, adequate and reasonable. Fed. R. Civ. P. 23(e)(1)(B) and (2); *Anthem*, 327 F.R.D. at 316. In determining whether a settlement is fair, adequate and reasonable, courts consider: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status; (4) the amount offered in settlement; (5) the extent of discovery and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Churchill Vill., L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

### i. The Strength of Plaintiffs' Case

Plaintiffs believe they have a strong case against Minted for liability, but acknowledge legal uncertainties that support settlement. On May 28, 2020, Minted publicly acknowledged that on May 6, 2020 unauthorized actors obtained information from its user account database, including customers' names, login credentials, telephone numbers, addresses and emails. Serino Dec. at ¶ 3. Plaintiffs alleged that prior to the breach, Minted failed to take appropriate security measures, such as implementation of an appropriate intrusion detection system. FAC, ECF 12 at ¶ 12, 15, 68 – 70. After the breach, Minted failed to take prompt remedial measures and waited more than two weeks to notify customers. *See* Atkinson Dec. at ¶ 2; Renvall Dec. at ¶ 2.

Here, the Settlement reflects the strength of Plaintiffs' claims regarding the breach, as well as Defendant's anticipated arguments, particularly on arbitration. "In considering the strength of Plaintiff's case, legal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval." *Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971, at *10 (N.D. Cal., Nov. 16, 2007); *Johnson v. Quantum Learning Network, Inc.*, No. 15-CV-05013-LHK, 2017 WL 747462, at *1 (N.D. Cal., Feb. 27, 2017) (pending motion to compel arbitration created uncertainty supporting approval). Moreover, data breach litigation is a new and developing field, with many untested issues. *See Anthem*, 327 F.R.D. at 317.

Without Settlement, Minted would continue to advance numerous defenses. Most notably, Defendant planned to seek individual arbitrations based on Minted's current terms of service. Serino Dec. at ¶ 24. While Plaintiffs intended to submit strong evidence opposing

15

arbitration, they recognize the real possibility of individual arbitration and that separate proceedings would not be economically viable for most customers. *Id*. Defendant is also likely to raise arguments put forth in other data breach litigation including causation and standing. *See In re Zappos.com, Inc*., 888 F.3d 1020, 1029 (9th Cir. 2018) (alleging that plaintiffs lacked standing and the ability to show their damages stemmed from the Zappos hack, as opposed to some other breach). As with all data breach cases, providing injury is difficult on a class basis and many of the methods, such as loss of value of PII and the benefit of the bargain approaches, remain untested with juries—although upheld by the courts. *See*, e.g., *In re Anthem, Inc. Data Breach Litig*., No. 15-MD-02617-LHK, 2016 WL 3029783, at *13-15 (N.D. Cal. May 27, 2016).

### ii.  The Risk, Expense, Complexity and Duration of Further Litigation

The risk, expense, complexity and likely duration of further litigation also support final approval. Although Plaintiffs have a strong liability case based on Minted's failure to adopt adequate security measures and promptly notify customers of the breach, continued litigation poses the risk of arbitration, class certification hurdles and contentious Daubert motions.  For example, before the Settlement, Defendant planned to seek arbitration on an individual basis. Serino Dec. at ¶ 24. Although Plaintiffs contend arbitration is not required pursuant to California Civil Code § 1798.192, the absence of an agreement and various other defenses, they acknowledge the federal policy favoring arbitration poses a significant and potentially case-crippling risk. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); Serino Dec. at ¶ 24 – 26.

Assuming Plaintiffs overcome the arbitration issue, they face challenges obtaining class certification, procuring the necessary discovery and preparing for trial. Data breach cases also involve technical cybersecurity issues that necessitate numerous experts. *See, e.g., Anthem*, 327 F.R.D. at 317 (noting that the parties would have relied on ten expert witnesses to prepare for trial). Moreover, data breach cases frequently entail numerous Daubert challenges and fierce disputes over whether companies must produce consultant reports. *See, e.g., Yahoo!*, 2020 WL 4212811, at *9 (discussing Yahoo's efforts to exclude plaintiffs' expert damage models). More broadly, this breach involves millions of Minted account holders, numerous legal theories, and significant costs. Even assuming Plaintiffs surmount these obstacles, the outcome at trial is always uncertain and

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

even a successful trial is subject to appeals. Such appeals would substantially delay recovery for the class when credit monitoring and identity restoration services are needed now.

### iii.   The Risk of Maintaining Class Action Status Throughout Trial

Class certification poses additional risks. First, Plaintiffs anticipate Minted would vehemently challenge their ability to proceed on a class basis and dispute any proposed damage models. Second, there is little precedent concerning certification in data breach actions because an overwhelming majority settle beforehand. *See Anthem*, 327 F.R.D. at 318.  While Plaintiffs expect to prevail at class certification under a viable damages model, they appreciate recent authority denying class certification in other data breach actions. *See, e.g., Adkins v. Facebook*, 424 F.Supp.3d 686, 699 (N.D. Cal. 2019) (granting certification of injunctive-only class but denying certification of damages class). Even when a court grants certification, it can decertify a class at any time. *Rodriguez*, 563 F.3d. at 966. Accordingly, the risks of securing and maintaining certification favor final approval of the Settlement. *See* Strebe Dec. at ¶ 9.

### iv.   The Amount Offered in Settlement

The proposed $5,000,000 Settlement provides significant relief for the class, both in comparison to other data breach settlements and in consideration of the nonmonetary relief envisioned in the Settlement.  In terms of direct relief to the class, the $5,000,000 settlement fund would provide for an estimated $22.01 payment per participating class member, two years of credit monitoring, and identity restoration services. SA at ¶ 3.3, 4.1; Cowen Dec. at ¶ 48.  The timing of the Settlement also helps class members capitalize on the benefits when they are most needed. By providing access to credit monitoring services now (as opposed to years down the road), Settlement Class Members can identify improper activity when it is more likely to occur. *See* Strebe Dec. at ¶ 9. Were class members to procure this service independently, it would cost an estimated $9.95 per month (or $238.80 for two years). Cowen Dec. at ¶ 28. When multiplied by the 64,753 class members requesting credit services, this yields a retail value of $15,463,016.40. *Id*.

Based on the smaller size of the breach and per-capita figures, the proposed Settlement is also robust compared to other data breach settlements.  For example, the $10 million consumer settlement in the Target data breach covered an estimated 100 million customers. *In re Target Corp.*

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

*Customer Data Sec. Breach Litig.*, No. MDL No. 14-2522 (PAM), 2017 WL 2178306, at *1-2 (D. Minn. May 17, 2017).  Likewise, in the Home Depot data breach litigation, the court approved a $13 million settlement for a class of roughly 40 million consumers. Serino Dec., Ex. B at 5, 9; *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *7 (N.D. Ga., Aug. 23, 2016) and ECF 181-2 at ¶ 22, 38. In fact, the proposed Settlement provides more relief per class member than is common, based on review of several recent data breach settlements. *See Yahoo!*, 2020 WL 4212811, at *10-11; *Home Depot*, 2016 WL 6902351, at *7 and ECF 181-2 at ¶ 22, 38; *LinkedIn*, 309 F.R.D. at 581; *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F.Supp. 2d 1040, 1047, 1079-1080 (S.D. Tex. 2012); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 WL 3341200, at *7, 9 (W.D. Ky., Aug. 23, 2010); *Target*, 2017 WL 2178306, at *1-2; *Anthem*, 327 F.R.D. at 318.

| PER CAPITA DATA ON RECENT DATA BREACH SETTLEMENTS | | | | |
|---|---|---|---|---|
| Litigation | Customers Affected | Settlement Fund | Per Capita Number | Credit Monitoring |
| Atkinson, et al. v. Minted, Inc. | ~4,198,490 | $5 million | 1.19 | 2 years |
| In re Target Customer Data Breach Security Litig. | 100 million | $10 million | .10 | Reimbursement of cost with documentation |
| In re the Home Depot Customer Data Sec. Breach Litig. | ~ 40 million | $13 million | .33 | 18 months |
| In re Yahoo! Customer Data Breach Litig. | 194 million | $117.5 million | .61 | 2 years |
| In re LinkedIn User Privacy Litig. | 6.4 million | $1.25 million | .20 | NA |
| In re Heartland Payment Sys. Customer Data Sec. Breach Litig. | > 100 million | Up to $2.4 million | .024 | NA |
| In re Anthem Data Breach Litig. | 79.15 million | $115 million | 1.45 | 2 years |
| In re Countrywide Fin. Customer Data Sec. Breach Litig. | 17 million | $6.5 million | .38 | 2 years |

The proposed Settlement is also reasonable in light of the potential recovery. *See* Class Action Guidance, Preliminary Approval 1(e). In other data breach cases, the parties used damage models that evaluated the value of customers' PII to assess potential damages. *See Anthem*, 327 F.R.D. at 319; *Yahoo!*, No. 5:16-md-02752-LHK, ECF 369 at 26 – 27 (April 9, 2019). In *Anthem*, for example, the parties used the black market price of personal information, with plaintiff's expert valuing the damages at $10 per individual and Defendant's expert valuing them at $4 per

18

individual. *Anthem*, 327 F.R.D. at 319.[5] Using the $7 midpoint, the proposed Settlement represents approximately 17.01% of the potential recovery in this case. This percentage is comparable with Anthem and is within the range of reasonableness based on the significant costs and risks of continued litigation (or arbitration). *See, e.g., Betancourt v. Advantage Hum. Resourcing, Inc.*, No. 14-CV-01788-JST, 2016 WL 344532, at *5 (N.D. Cal., Jan. 28, 2016) (finding a settlement representing 9.7% of the potential recovery within the range of reasonableness); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 1, 2015) (finding a settlement worth 10% of the potential recovery reasonable); *Anthem*, 327 F.R.D. at 319.

The Settlement also provides a guaranteed payment to all participating Settlement Class Members without requiring them to spend additional time gathering documentation of their losses. By structuring payments in this manner, Plaintiffs decreased the cost of administering the settlement and maximized relief for the class. The Settlement structure also sought to and did in fact encourage participation. *See* Serino Dec. at ¶ 42 – 43, 45. The 3.5% response rate for payment claims was nearly double the anticipated participation rate, which was independently derived by the Settlement Administrator using data from comparable cases. Cowen Dec. at ¶ 43. In addition, without having to document their claims, Settlement Class Members who are or become victims of identity theft will have access to identity restoration services that will assign them a dedicated representative to assist with fraud resolution, dispute transactions, prepare paperwork, mediate calls, negotiate on their behalf, use limited power of attorney and assist with fraud alerts. Cowen Dec. at ¶ 29.

The Settlement also includes valuable non-monetary relief that reduces the risk that class members' information is subject to a future intrusion. Under the Settlement, Minted must: (1) maintain an information security program to implement safeguards and identify external security risks to PII; (2) provide annual security training for employees, including on secure coding; (3) implement an application that filters, monitors and blocks HTTP traffic to Minted's website to protect against attacks; (4) enhance password protection through increased salting and hashing; (5) conduct monitoring of security events and vulnerability scanning; (6) implement a policy regarding retention of PII to avoid maintenance of PII beyond what is appropriate; (7) enhance security features

---

5 Applying the midpoint of $7.00, the potential damages here total approximately $29,398,430.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL**
**APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

for its software coding repository; and (8) implement a patch management process to ensure security patches are up-to-date on company-owned workstations and servers. SA at ¶ 6.2 – 6.12. Minted also agreed to an annual security audit under recognized cyber security frameworks. *Id*. at ¶ 6.13. Plaintiffs' expert supports these measures as significant steps to prevent future breaches. *See* Strebe Dec. at ¶ 10, 13. Plaintiff's expert further estimates implementation of these changes is likely to cost approximately $1,815,000.00 million. *Id*. at ¶ 14. Moreover, these business practice changes will benefit all Class Members regardless of participation. Given the size of the fund and the valuable nonmonetary relief provided, the amount of the settlement weighs in favor of final approval.

### v. The Extent of Discovery and the Stage of the Proceedings

Class Counsel's independent investigation of the breach, certain informal discovery from Minted, extensive consultation with industry experts, and widespread public reporting of the Shiny Hunters hack provided Plaintiffs with ample data to negotiate a beneficial settlement for the Class. "In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego*, 213 F.3d at 459. While the parties acknowledge that discovery and proceedings were in the early stages, this factor nevertheless weighs in favor of final approval.

In particular, Class Counsel independently investigated Minted's data breach, including the specific information taken by Shiny Hunters, the scope of the breach and Minted's response. Oliver Dec. at ¶ 4 – 5. Class Counsel also comprehensively examined Minted's exposure, liability and defenses in drafting the Complaint and litigating this matter. *See* Serino Dec. at ¶ 6 – 7. Class Counsel consulted with appropriate industry experts, including as part of the settlement process to ensure Minted made meaningful security changes. Oliver Dec. at ¶ 20 – 21. Counsel also took advantage of publicly available information regarding the breach, which Minted announced to customers on May 28, 2020. Serino Dec. at ¶ 5; Atkinson Dec. at ¶ 2. In addition, Class Counsel obtained documents from Minted regarding the breach and the class. Oliver Dec. at ¶ 20. As part of the litigation and settlement process, Class Counsel also investigated Minted's insurance, examined Minted's financials and reviewed Minted's internal reports regarding the breach. *Id*. at ¶ 15, 20.

As to formal discovery, the parties exchanged initial disclosures pursuant to Rule 26(a), met and conferred regarding contentious arbitration-related discovery for nearly three months, and submitted discovery letters to the Court regarding the same. Oliver Dec. at ¶ 12 – 13, 16. Prior to settlement, the parties were moving forward with arbitration-related discovery and briefing. *Id.* In fact, Plaintiffs were scheduled and prepared to have their depositions taken when the parties agreed to mediate before Randall Wulff of Wulff Quimby Sochynsky ADR. *See* Serino Dec. at ¶ 13 – 14.

While nascent, the state of proceedings favors approval. Indeed, the forthcoming motion to compel threatened to derail the class claims by requiring individual arbitration. Plaintiffs had to balance the risk of proceeding and potentially eliminating the class claims, with the potential benefit of obtaining additional discovery, advancing proceedings and possibly procuring additional funds. Serino Dec. at ¶ 26. While Plaintiffs dispute Minted's characterization, Defendant contends customers are required to individually arbitrate disputes pursuant to its Terms of Service. *Id.* at ¶ 24. During litigation, the Ninth Circuit also issued an opinion in *Dohrman v. Intuit, Inc.*, 823 Fed.App'x. 482, 484 (9th Cir. 2020) regarding clickwrap agreements. Moreover, individual arbitration would preclude any form of class recovery and individual recovery would dwarf the cost of prosecution. Serino Dec. at ¶ 26.  On balance, the stage of the proceedings supports approval because the Settlement achieves relief for all affected Minted customers.

### vi.   The Experience and Views of Counsel

In evaluating a proposed settlement, the recommendations of Class Counsel should be given a presumption of reasonableness. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d. 1036, 1043 (N.D. Cal. 2007). Here, Counsel endorses the Settlement as fair, adequate and reasonable.  Serino Dec. at ¶ 31. Class Counsel has decades of experience litigating complex and class action cases. Serino Dec. at ¶ 28 – 30; Oliver Dec. at ¶ 26. Jennifer Oliver is a complex litigator with over ten years of experience handling antitrust matters and consumer class actions, and her firm MoginRubin is known for success in *Containerboard Products Antitrust Litigation and Dynamic Random Access Memory (DRAM) Antitrust Litigation*. Oliver Decl. at ¶ 26 – 28.  Likewise, Natasha Serino has successfully represented aggrieved consumers and employees, including as lead trial counsel against Alaska Airlines, which resulted in one of the top ten bench awards in the country for 2019. *See Gunther v.*

*Alaska Air Group, Inc.*, No. 37-2017-00037849CU-OE-NC, 2019 WL 8402163 (Cal.Super. Sep. 4, 2019) ($25 million judgment for flight attendants); Serino Dec. at ¶ 30. In light of their experience, Class Counsel's endorsement of the settlement supports final approval.

### vii.   The Presence of a Government Participant

Plaintiffs pursued claims without any government participation. Following preliminary approval, Defendant notified the U.S. Attorney General and the states' Attorneys General pursuant to 28 U.S.C. § 1715. ECF 59. To date, no government entity has raised concerns. Serino Dec. at ¶ 46.

### viii.   The Reaction of Class Members to the Proposed Settlement

The positive response from the Settlement Class weighs in favor of final approval as there was higher-than-anticipated participation, an extremely low opt-out rate and no objections. Low rates of objections and opt-outs are indicia of the approval of the class. *Anthem*, 327 F.R.D. at 320-321 (finding approval where the opt-out rate was 0.0005%); *Sugarman v. Ducati N. Am., Inc.*, No. 5:10-cv-05246-JF, 2012 WL 113361, at *3 (N.D. Cal. Jan. 12, 2012) (granting approval and noting a positive response where there were 42 objections from a class of 38,774); *Churchill*, 361 F.3d at 577 (affirming settlement with a 0.0056% opt-out rate and 45 objections); *Custom LED, LLC v. eBay, Inc.*, No. 12-cv-00350-JST, 2014 WL 2916871, at *5 (N.D. Cal. June 24, 2014) (characterizing a 0.04% opt-out rate with one objection as an "overwhelmingly positive reaction" from class).

 In this case, only 12 of the estimated 4,198,490 Settlement Class Members opted out of the Settlement, representing just .00029% of the Class.[6] Cowen Dec. at ¶ 58. This is less than the opt-out rates in *Churchill*, *Anthem* and *Custom LED*. In comparison to *Sugarman*, where the court granted approval with 42 objectors, there are also no objections to the Settlement. Based on *Custom LED*, this is an "overwhelmingly positive reaction." The comparatively high participation rate also indicates a positive response to the Settlement. The response rate of 3.5% is approximately double the anticipated participation rate and exceeds claims rates in other class actions. Cowen Dec. at ¶ 43 – 44. For example, the rate is more than double the participation rates in *Anthem* (1.8%) and *Chipotle Mexican Grill* (0.83%). *Anthem*, 327 F.R.D. at 321; *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020). The level of participation, the absence of objections

---

[6] Approximately 118 Minted customers engaged in arbitration of their claims with Minted.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

and the low number of opt-outs, fully justify final approval of the Settlement. Based on the high participation and counsel's provision of information for the post-distribution accounting, Class Counsel request a waiver of the traditional 10% holdback of attorneys' fees and costs.

### ix.  The Proposed Settlement is Non-Collusive

The Settlement is the result of arms-length negotiations. On January 5, 2021, the parties engaged in an all-day mediation before mediator Randall Wulff. Serino Dec. at ¶ 14. After reaching a tentative agreement, it took over three months to negotiate the business practice changes with expert consultation, procure and review Defendant's financials, and agree on settlement terms. *Id*. at ¶ 14. Through this process, Class Counsel carefully vetted the settlement and maximized the benefits to the Class. Where a settlement is achieved through arms-length negotiations conducted by capable counsel before an experienced mediator, this further supports approval. *Garner v. State Farm Mut. Auto. Ins. Co*., No. CV08-1365 CW EMC, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010); *Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *In re Google Plus Profile Litig*., No. 5:18-cv-06164-EJD, 2021 WL 242887, at *3 (N.D. Cal. Jan. 25, 2021) (finding a settlement was negotiated at arms-length with the assistance of mediator Randall Wulff). In this case, the Settlement is the product of sustained, arms-length negotiations, including before a recognized mediator.

### C.  The Notice Program Was Appropriate

The notice program was implemented in accordance with the Court's Order (ECF 52) and satisfies Fed. R. Civ. P. 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In particular, the Settlement Administrator successfully delivered direct email notice to 4,007,437 Class Members, or 95.45% of the Settlement Class, and provided supplemental notice through a targeted digital media campaign. Cowen Dec. at ¶ 13; Serino Dec. at ¶ 35 – 36.

First, the notice clearly stated: (i) the nature of the action; (ii) the class definition; (iii) the class claims; (iv) that a class member may appear through an attorney if desired; (v) that the court will exclude any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the settlement's binding effect. Fed. R. Civ. P. 23(c)(2)(B); *Torrisi v. Tucson*

*Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993) (finding notice satisfactory where it stated the aggregate amount of the settlement and general formula for computing awards). Here, the notice plainly described the breach, Minted's failure to maintain reasonable security, what the Settlement Fund will be used to pay, how to receive money, how to opt out or object, the settlement's binding effect, and the calculation of anticipated payments. Serino Dec. at 38, Ex. C at 1 – 10.

Second, the notice plan approved by the Court, which primarily relied on direct email, was fully implemented and complies with Rule 23(c)(2)(B). The program included notice via: (1) direct email with links to the Settlement website; (2) a targeted social media campaign; (3) a website with information regarding the Settlement; (4) a press release; and (5) a banner ad. SA at ¶ 7.2; Cowen Dec. at ¶ 7, Ex. B; Serino at ¶ 36. This notice plan befits the class of technologically savvy individuals who used Minted's website. *See, e.g., Noll v. eBay, Inc.*, 309 F.R.D. 593, 604-605 (N.D. Cal. 2015). To facilitate this plan, Minted provided email addresses for over 4 million Settlement Class Members.[7] After email verification and deduplication, the Settlement Administrator emailed notice to 4,065,594 Settlement Class Members (approximately 97%) beginning June 14, 2021 to June 30, 2021. Cowen Dec. at ¶ 11. To minimize undeliverable emails and avoid spam filtration, the Settlement Administrator used links instead of attachments, sent emails in batches, and performed a deliverability analysis. *Id.* at ¶ 12 – 13. Of the 4,065,594 emails sent, 98.6% were delivered, thereby achieving direct notice to 95.45% of the class. *See Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169 at *2, 4 (N.D. Cal. Sept. 27, 2018) (granting approval where direct notice reached 79.1% of class); *Abante Rooter & Plumbing, Inc. v. Pivotal Payments, Inc.*, No. 3:16-cv-05486-JCS, 2018 WL 8949777, at *5 (N.D. Cal. Oct. 15, 2018) (granting approval where mail notice reached 95.2% of class); Cowen Dec. at ¶ 13.

To reach the 3-5% of Settlement Class Members with undeliverable or unknown emails, the Settlement Administrator ran a digital media campaign targeting Settlement Class Members with ads through the Google Display Network, Facebook, and Instagram platforms. Cowen Dec.

---

[7] Based on raw data, Minted provided 4,220,125 email addresses, which were then culled to eliminate duplicates and conduct email verification. A.B. Data removed 154,531 duplicate or invalid email addresses and then sent a total of 4,065,594 emails. Cowen Dec. at ¶ 11.

**MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION FOR FINAL APPROVAL OF SETTLEMENT; CASE NO. 3:20-CV-03869-VC**

at ¶ 15. The campaign achieved approximately 2,685,813 unique impressions. *Id*. at ¶ 19. This is 20 times the estimated 132,896 class members with undeliverable emails. *See id*. at 13. It also exceeds the advertising ratio in *Anthem*, where the settlement administrator purchased 180 million impressions to reach the 23 million class members with unknown mailing or email addresses. *Anthem*, 327 F.R.D. at 328. The digital campaign also included a 45-day banner notice on Minted's homepage concerning the settlement with a link to the Settlement website. Serino Dec. at ¶ 36. Through these mechanisms, Settlement Class Members received the best notice practicable that complied with due process, as further evidenced by the higher-than-anticipated participation.

### D. Final Appointment of Settlement Class Counsel

Pursuant to Rule 23, "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In doing so, courts consider counsel's: (1) work in investigating claims; (2) experience in handling class actions and the types of claims asserted; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Here, Class Counsel were the only attorneys to pursue class claims against Minted related to the May 2020 data breach. Serino Dec. at ¶ 32. In doing so, they committed significant resources to representing affected consumers, despite the risk of forced arbitration. *Id*. As previously shown, Ms. Oliver has substantial experience in complex litigation and data privacy cases, and has written and spoken extensive on privacy, especially the new CCPA. Oliver Dec. at ¶ 27. SLG also has significant class action experience, including on data breach and other consumer cases. Serino Dec. at ¶ 30.

### VI.   CONCLUSION

In light of the significant benefits provided by the Settlement, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Final Approval.

Respectfully Submitted,

Dated: November 1, 2021

By: _____/s/ Natasha N. Serino_____
**SCHACK LAW GROUP**
Natasha Serino, Esq., (SBN 284711)
Shannon F. Nocon, Esq., (SBN 316523)

**MOGINRUBIN LLP**
Daniel J. Mogin, Esq., (SBN 95624)
Jennifer M. Oliver Esq., (SBN 31119)
*Class Counsel for Plaintiffs*

25